IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,300

STATE OF KANSAS,
*Appellee*,

v.

ANDREW CHARLES REDICK,
*Appellant*.

SYLLABUS BY THE COURT

1.

The exception to the requirement of preservation of an appellate constitutional challenge—when consideration of an issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights—is applied to a claim that a criminal defendant's jury trial waiver was inadequate.

2.

On the record in this case, the defendant's waiver of his right to jury trial was knowing and voluntary. The district judge's colloquy during the waiver hearing was minimally adequate; her failure to specifically address the requirement that a guilty verdict be unanimous was not fatal; and the defendant demonstrated his awareness and understanding of the right he affirmatively chose to surrender.

3.

Violation of a sequestration order does not of itself disqualify a witness from testifying; a district judge, in his or her discretion, may permit the witness to testify. A district judge's failure to appreciate the existence of this discretion and any corollary failure to exercise it are legal errors that constitute an abuse of discretion.

4.

A defendant's failure to proffer excluded testimony makes it impossible for an appellate court to determine whether a legally erroneous exclusion was harmless.

5.

A district judge's designation of the incorrect primary crime in a multiple-conviction case and application of the incorrect criminal history score require vacation of the defendant's sentence and remand for resentencing.

Appeal from Shawnee District Court; CHERYL RIOS, judge. Opinion filed April 13, 2018. Convictions affirmed, sentence vacated, and case remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause, and *Joanna Labastida*, of the same office, was on the brief for appellant.

*Rachel L. Pickering*, assistant district attorney, argued the cause, and *Jodi Liftin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

2

The opinion of the court was delivered by

BEIER, J.:  Defendant Andrew Charles Redick appeals from his convictions for premeditated first-degree murder and arson in the killing of his girlfriend, Lena Keithley, and the burning of her car. He was sentenced to life in prison for the murder and to a consecutive 13 months for the arson.

Redick challenges the adequacy of his waiver of the right to a jury trial, the district judge's refusal to admit testimony from a defense witness who had violated a sequestration order, and the legality of his sentence. We affirm Redick's convictions, vacate his sentence, and remand the case to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Redick was in a romantic relationship with Keithley. In the weeks leading up to her death, Redick told multiple people that he believed the spirit of his deceased mother was living in her.

On November 14, 2013, Keithley checked into the Country Club Motel in Topeka. Because Keithley and Redick stayed at the motel regularly, the motel's owner was familiar with both; and he saw Redick waiting in Keithley's car.

The following morning, the motel owner began calling Keithley's room after she failed to check out on time. Unsuccessful in reaching Keithley, he asked the housekeeper to check the room. The housekeeper found Keithley wrapped in a comforter, lying on the floor between the bed and a wall. After the housekeeper and the owner were unable to get a response from Keithley, they called 911. First responders determined Keithley was dead.

The next day, Keithley's abandoned car was found; its interior had been burned.

As a result of their investigation into Keithley's death and the burning of her car, officers arrested Redick, who denied knowing Keithley.

The State charged Redick with premeditated first-degree murder and arson.

At the conclusion of a pretrial motions hearing, Redick's counsel informed the district judge that Redick wished to waive his right to a jury trial, and the district judge spoke directly to Redick:

> "[Defense counsel]: Your Honor, in our brief break and conversation, Mr. Redick indicated to me he was fearful that it would be difficult to find a jury that will not be prejudiced against him and that he would like to waive his right to trial by jury and try this case to the Bench. I checked with [the prosecutor,] and she's agreeable to that if the Court is agreeable to that. I think Mr. Redick's position is he believes he's preserved those issues that he would like to appeal; and, that's, I think, probably the driving force behind that decision.
>
> "The Court: Okay. I would like to make independent inquiry of his waiver. Please stand. Mr. Redick, you have a constitutional right to be tried by a jury of your peers in this community and the Court must provide that to you. But I've been advised that you would prefer not to proceed in that fashion, and you would like to waive that right. Is that correct?
>
> "Mr. Redick: Yeah.
>
> "The Court: And has anyone threatened you or coerced you to get you to waive this right against your will?

4

"Mr. Redick: No.

"The Court: Are you proceeding in this way knowingly and voluntarily?

"Mr. Redick: Yes.

"The Court: Is this entirely your decision and not your attorney's decision?

"Mr. Redick: Yes.

"The Court: Okay.

"[Defense counsel]: I can advise the Court we have not discussed that until about five minutes ago quite frankly.

"The Court: Thank you. All right. At this time the Court will accept defendant's waiver of his right to have a jury trial, and the Court will proceed on Monday at 9:00 a.m. Counsel, are you going to have your witnesses ready at nine?

"[Prosecutor]: You bet.

"The Court: Monday at 9:00 a.m. for a [] trial to the Bench.

"[Defense Counsel]: Thank you, Your Honor.

"[Prosecutor]: Your Honor, I wonder if the defendant is under any medication at this time?

"The Court: Yeah, Mr. Redick, I know [] that sounds silly.

"Mr. Redick: No.

5

"The Court: It does seem silly, but I will ask because some people do get medications for various reasons in custody. And so I need to ask if—

"Mr. Redick: No, I'm not on any medication or any type of hallucinogenic or any type of drug. I just feel that the newspapers, they got, when I sent the affidavit to the newspaper, all they seen was the arresting affidavit. They don't see two sides. They see one side; and they seen that side several times; and, therefore, they'll never be able to know anyone else's side. They are always going to side with the law.

"The Court: Okay. Well, I appreciate that explanation. You've made it clear in fact to me that you are clearly making this—it is a thoughtful decision that you are making in your defense; and so I understand it better now. Thank you for explaining that. Okay. All right. Thank you. We'll stand in recess."

During trial, defense counsel requested and received a sequestration order.

The State's case against Redick included testimony from law enforcement about Redick's release from jail the day before Keithley's murder and his arrest the day after her body was discovered. At the time he was arrested, Redick had three pawn tickets in Keithley's name and the tag from a piece of furniture in his pockets. An officer determined that the tag came from a chair in a room at the Country Club Motel that Keithley had rented about a month before her death. In addition, DNA testing confirmed the presence of Redick's DNA on two cigarette butts in Keithley's room and on underwear found in a dumpster in the motel's parking lot. Security camera footage from the motel depicted Redick driving Keithley's car away from the motel about midnight the night of Keithley's murder, and investigators determined the fire inside Keithley's car had been intentionally set.

A friend of Keithley and Redick testified at trial that on the evening of Keithley's murder, she called Keithley's motel room. Redick answered the phone, and the friend

asked him if he had cigarettes. He did. About 40 minutes later, the friend walked over to Keithley's room to get a cigarette. Through the closed door to the room, she heard Keithley say, "You are hurting me," and heard Redick say, "I'll kill you, bitch." The friend assumed the couple was engaged in rough sex and left without knocking.

Keithley's niece also testified at trial. She said she saw Redick walking down the street the morning Keithley's body was found. At that time, she was unaware of Keithley's death. Redick stopped her car and got inside without her invitation. She said Redick was "disgusting" and stank of "cleaning fluid and . . . oil." He had a leather gym bag with him that he kept between his knees. He also asked when she had last seen Keithley.

Another friend of Redick testified that Redick came to her home the day Keithley's body was found and asked her to cut his long hair and to say that the haircut had happened a day earlier. The woman's daughter testified that she found a motel receipt with Keithley's name on it after Redick had been at her mother's home.

Yet another friend of Redick testified that Redick told her he had broken Keithley's neck and that someone had given her a "hotshot," which she understood to be a reference to drugs.

Sometime after news of Keithley's murder spread, Redick asked a friend to hold Keithley's identification card and Social Security card, as well as jewelry bearing a "Lena" engraving. The friend also testified that Redick told him he was the last person in the motel room with Keithley.

Finally, the State's case also included testimony from the coroner about Keithley's injuries, which included bruising on her mouth and neck and abrasions on her forearms.

He determined that her cause of death was asphyxia due to strangulation. Keithley also had methamphetamines in her system, which might have hastened but did not cause her death.

After the State rested, Redick sought to call a witness in his defense. The district judge asked whether the witness had been in the courtroom for "all of the testimony," and defense counsel responded: "She has been." The State then objected, arguing that the witness had violated the sequestration order. The judge disallowed the testimony. Defense counsel did not identify the potential witness or make a proffer of the desired testimony.

The district judge found Redick guilty on both counts.

Redick received a hard 25 life sentence for the first-degree murder charge. The judge identified the murder conviction as the "primary crime" in the journal entry and sentenced Redick to 13 months on the arson, based in part on a criminal history score of "I." The judge also depended upon the fact that Redick had murdered Keithley while he was on felony postrelease supervision, which triggered a special sentencing rule requiring the sentences to be run consecutively. See K.S.A. 2016 Supp. 21-6606(c) (when defendant commits crime while on postrelease supervision for felony, new sentence "shall" be consecutive); see also K.S.A. 2016 Supp. 21-6604(f)(2) (sentencing judge may impose prison even when sentence presumptively nonprison, if new crime a felony).

WAIVER OF JURY TRIAL

Redick first argues on appeal that the district judge failed to advise him fully of the rights he gave up by waiving his right to a jury trial. The State notes that there is a threshold question concerning preservation on this issue.

The State acknowledges this court has considered this type of issue for the first time on appeal but argues there is no bright-line rule compelling the court to consider it. The State suggests that this is not the proper case for exceptional treatment. See *State v. Luna*, 271 Kan. 573, 577, 24 P.3d 125 (2001) (declining to consider challenge to jury trial waiver raised for first time on appeal).

In general, of course, we do not review issues not raised for the first time until appeal. See *State v. Shadden*, 290 Kan. 803, 813, 235 P.3d 436 (2010). But we recognize three exceptions allowing an appellate court to consider a constitutional issue raised in such circumstances, including one applied when "consideration of the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Anderson*, 294 Kan. 450, 464-65, 276 P.3d 200 (2012)." *State v. Rizo*, 304 Kan. 974, 978-79, 377 P.3d 419 (2016).

In *Rizo*, this court recognized the prudential nature of the preservation rule and used its discretion to apply an exception to review a jury trial waiver issue raised for the first time on appeal. 304 Kan. at 979. We cited *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012), which did likewise and stated: "[W]hether the court has advised a defendant of his or her right to a jury trial . . . should be one of the last [issues] to be denied the opportunity for exceptional treatment." 294 Kan. at 370; see also *State v. Beaman*, 295 Kan. 853, 856-62, 286 P.3d 876 (2012) (considering whether jury trial waiver colloquy adequate when issue raised for first time on appeal). Given the fundamental nature of the right to jury trial, we will follow the lead of these cases and address the merits of the issue raised by Redick in this appeal.

The *Rizo* decision also restated our standard of review for appellate challenges to jury trial waivers:

9

> "'Whether a defendant waived the right to a jury trial is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review.' *Beaman*, 295 Kan. at 858." 304 Kan. at 979.

Here, we have no dispute on the facts of the colloquy at the time of Redick's jury trial waiver, and we thus exercise unlimited review on the question of whether Redick acted knowingly and voluntarily. In doing so, we are mindful that "jury trial waivers should be strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury." *State v. Lewis*, 301 Kan. 349, 376, 344 P.3d 928 (2015).

The Sixth Amendment to the United States Constitution and Sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a jury trial, as does K.S.A. 22-3403(1), which states that all felony cases will be tried to juries, unless "the defendant and prosecuting attorney, with the consent of the court," elect to submit the trial to the court. See also *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975) ("The right of a criminal defendant to be tried by a jury of his peers, rather than by the court alone, is 'fundamental to the American scheme of justice.'") (quoting *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 [1968]). Thus, as we said in *Rizo*,

> "[T]he district court cannot accept a jury trial waiver '"unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record."' *Irving*, 216 Kan. at 589-90 (quoting American Bar Association Standards for Criminal Justice, Trial by Jury, Section 1.2[b], p. 7)." 304 Kan. at 979-80.

The choice whether to waive jury trial rests solely with the defendant. *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). And "[t]he test for determining a waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends upon the particular facts and circumstances in each case." *Lewis*, 301 Kan. at 376.

Kansas appellate courts have upheld jury trial waivers even when the district judge has not fully explained all of the particulars of the right. See *Lewis*, 301 Kan. at 377-78 (jury trial waiver valid despite judge's failure to inform defendant of attorney's ability to make challenges to jurors under *Batson v. Kentucky*, 476 U.S. 79, 88-89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 [1986]); *Beaman*, 295 Kan. at 859, 862 (jury trial waiver valid although judge did not explain requirement of 12-person unanimity on guilt); *State v. Clemons*, 273 Kan. 328, 340-41, 45 P.3d 384 (2002) (jury trial waiver valid despite judge's failure to inform defendant of unanimity requirement); see also *State v. Savage*, No. 112,882, 2015 WL 8590269, at *5-7 (Kan. App. 2015) (unpublished opinion) (jury trial waiver valid despite judge's failure to distinguish among jury trial, bench trial, trial on stipulated facts).

Redick makes a general claim that the district judge did not inform him of "many of his rights related to his right to a trial by a jury of his peers" and then specifically attacks the judge's failure to tell him that a jury's guilty verdict would have to be unanimous. He places heavy reliance on our *Frye* decision in favor of a defendant's appellate claim, but the facts of that case are readily distinguishable from those before us here. In *Frye*, we were compelled to hold that a jury trial waiver was inadequate when the district judge had made no effort to ascertain the validity of a handwritten waiver and had not advised the defendant of his right to jury trial. 294 Kan. at 371, 373.

11

We are otherwise unpersuaded by Redick's general or specific arguments. As to the general, although it is true that the judge's remarks in the colloquy we consider today were not as expansive as they could be, they were minimally sufficient. And, as noted above, this court has previously rejected Redick's specific challenge to district judges' failures to articulate the jury-unanimity requirement. See *Beaman*, 295 Kan. at 859, 862; *Clemons*, 273 Kan. at 340-41. In addition, the transcript of the waiver hearing demonstrates that Redick knew and understood that he had a right to a jury trial and that he affirmatively chose to forego it and submit his case to the judge. He explained why he wished to waive a jury trial, expressing concern about the effect that publicity surrounding the case would have on his ability to get a fair jury trial. He also was insistent that he was not on any medication or other drugs that would have impaired a knowing and voluntary waiver. We would have preferred that the judge explained the steps that could have been taken to ensure the seating of a fair and impartial jury, whose participation in the process would be unadulterated by prejudicial pretrial news coverage, but the omission of this information did not render Redick's waiver unacceptable.

## VIOLATION OF SEQUESTRATION ORDER AND EXCLUSION OF TESTIMONY

Redick next argues that the district judge's refusal to allow him to present the testimony of a witness despite the witness' violation of the sequestration order denied him his constitutional right to a fair trial. He urges that the excluded evidence was integral to his defense.

"Under the state and federal Constitutions a defendant is entitled to present the theory of his or her defense, and the exclusion of evidence that is an integral part of that theory violates a defendant's fundamental right to a fair trial." *State v. Cooperwood*, 282 Kan. 572, Syl. ¶ 1, 147 P.3d 125 (2006). If constitutional error is found, the court reviews for harmlessness. The State, as the party potentially benefitting from any constitutional

12

error, bears the burden of establishing harmlessness. *State v. Sampson*, 297 Kan. 288, 299-300, 301 P.3d 276 (2013). It must demonstrate "beyond a reasonable doubt that the error complained of did not affect substantial rights, meaning there is not a reasonable possibility that the error contributed to the verdict obtained." *State v. Ward*, 292 Kan. 541, 578, 256 P.3d 801 (2011).

It is a "well-established rule in Kansas . . . that [a] violation of a court order separating witnesses does not of itself disqualify a witness from testifying, and the trial court in its discretion may permit the witness to testify." *State v. Cantrell*, 234 Kan. 426, 430, 673 P.2d 1147 (1983); see also *State v. Crum*, 286 Kan. 145, 161, 184 P.3d 222 (2008) (sequestration not a right; decision on sequestration committed to sound discretion of trial court). "Moreover, the aim of sequestration is to 'exercise a restraint on witnesses tailoring their testimony to that of earlier witnesses and aids in detecting testimony that is less than candid.' *State v. Heath*, 264 Kan. 557, 589, 957 P.2d 449 (1998) (citing *Geders v. United States*, 425 U.S. 80, 87, 96 S. Ct. 1330, 47 L. Ed. 2d 592 [1976])." *Crum*, 286 Kan. at 161.

Redick relies on *State v. Hill*, 10 Kan. App. 2d 607, 609, 706 P.2d 472 (1985), to establish reversible error. In *Hill*, a Court of Appeals panel ruled that a district judge erroneously prohibited a witness from testifying after discovering that the witness had violated the sequestration order. The panel ruled that the defendant did not need to make a proffer of the witness' testimony because the judge's ruling essentially treated "the witness, and not his evidence, [as] incompetent, [rendering it unnecessary] to make a record of the witness' testimony." 10 Kan. App. 2d at 609.

For its part, the State relies on K.S.A. 60-405, which provides that a

> "verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

Under the statute, the State argues, Redick's failure to proffer the testimony of the still-unidentified witness is fatal to his claim of error or, at a minimum, renders any error harmless.

In our view, the State is half right.

The absence of a proffer does not prevent us from observing that the district judge erred as a matter of law, and thus abused her discretion, see *Ward*, 292 Kan. at 576, to the extent she treated exclusion of the defense witness' testimony as an automatic consequence of violation of the sequestration order. She could have excused the violation and allowed or limited the testimony. A failure to recognize that one has discretion and any corollary failure to exercise it are legal errors. See *State v. Stewart*, 306 Kan. 237, 262, 393 P.3d 1031 (2017) (abuse of discretion to refuse to exercise it, fail to appreciate its existence).

But we agree with the State that any such error cannot be evaluated effectively for harmlessness on the record before us. The absence of a proffer means that we are unable to discern whether the unidentified defense witness' testimony could have made any dent, much less a crippling one, in the State's case against Redick. Although the bulk of that case was circumstantial, it was nevertheless substantial; and the State may rely entirely on circumstantial evidence to obtain even the most serious of criminal convictions. See

*State v. Banks*, 306 Kan. 854, 858-59, 397 P.3d 1195 (2017). And the State's case also included the more-than-merely-circumstantial testimony from Redick's friend about Redick's statement that he had broken Keithley's neck. Although the cause of death was ultimately determined to be asphyxia due to strangulation, a killer with no medical training might be less than precise in his or her description of a lethal act and its effect. This reality qualifies the statement from Redick as damning.

ILLEGAL SENTENCE

Redick's last appellate argument challenges his sentence as illegal. This challenge requires statutory interpretation, and we review such questions de novo. *State v. Brown*, 303 Kan. 995, 1005, 368 P.3d 1101 (2016).

Under K.S.A. 22-3504(1), an "illegal" sentence is

"'(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served.' *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013)." *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

Redick argues that his sentence runs afoul of K.S.A. 2016 Supp. 21-6819, which governs sentencing in multiple-conviction cases, in three ways. Subsection (b) of that statute focuses on "cases where consecutive sentences may be imposed" and provides in part:

"(2) The sentencing judge shall establish a base sentence for the primary crime. . . . An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences. . . .

15

"(3) The base sentence is set using the total criminal history score assigned.

"(4) The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence. . . .

"(5) Nonbase sentences shall not have criminal history scores applied, as calculated in the criminal history I column of the grid, but base sentences shall have the full criminal history score assigned. . . ."

Redick's three claims are: (1) the district judge incorrectly identified the off-grid crime of premeditated first-degree murder as the "primary crime" in violation of (b)(2); (2) the judge incorrectly applied criminal history I to the arson conviction in violation of (b)(5); and (3) the judge violated subsection (b)(4) by imposing a total sentence greater than double the correct base sentence on the arson conviction.

This court has previously interpreted K.S.A. 2016 Supp. 21-6819 and its predecessors.

In *State v. Walker*, 283 Kan. 587, 615, 153 P.3d 1257 (2007), we rejected defendant Michael D. Walker's argument that his conviction for first-degree felony murder should have been the primary crime used for calculating his base sentence. The court, interpreting a previous version of the sentencing guidelines with identical language to the current subsection (b)(2), held that felony murder cannot be used as the primary crime when determining the base sentence because it is an off-grid crime. 283 Kan. at 615; see also Kansas Sentencing Guidelines Desk Reference Manual, Appendix B, at 3 (2016) (instructions for completing Kansas Sentencing Guidelines Act Journal Entry of Judgment: "The Primary Offense is generally the most serious offense of conviction.

16

However, an off-grid crime shall not be used as the primary crime in determining the base sentence in multiple conviction cases.").

We also recently considered how the "double rule" of subsection (b)(4) and an off-grid life sentence interact in *State v. Brown*, 303 Kan. 995, 368 P.3d 1101 (2016). In that case, defendant Milo J. Brown received a life sentence for an off-grid first-degree felony murder conviction. He also was sentenced for additional on-grid crimes, and the district judge imposed a consecutive 60 months' imprisonment for an aggravated burglary and concurrent sentences for three remaining convictions. Brown argued that his sentence was illegal because the total was longer than twice his base sentence. We rejected this argument: "The K.S.A. 2014 Supp. 21-6819(b)(4) language on which [Brown] seeks to rely refers only to the total maximum sentence received for *multiple on-grid crimes* in one case." (Emphasis added.) 303 Kan. at 1005-06. The double rule does not apply to an off-grid sentence. *State v. Louis*, 305 Kan. 453, 467-68, 384 P.3d 1 (2016).

Redick was convicted of the off-grid crime of first-degree murder and of arson, a severity level 7 crime. Under K.S.A. 2016 Supp. 21-6819(b)(2), his murder conviction could not be the primary crime for establishing the base sentence, because it is off-grid. This means that Redick's first criticism of the district judge is correct. The judge erred in identifying the off-grid crime as the primary crime for purposes of calculating Redick's sentence. The arson conviction, the only other conviction and therefore also the on-grid crime with the highest severity level, should have been used as the primary crime for calculating Redick's base sentence.

The judge's error in misidentifying the primary conviction led to the second sentencing error, which was use of the statutory criminal history score I instead of Redick's actual criminal history score C for calculating the arson sentence. See K.S.A. 2016 Supp. 21-6819 (b)(5) (only nonbase sentences calculated using criminal history

17

score I); K.S.A. 2016 Supp. 21-6819(b)(3) (base sentence set using total criminal history score assigned to defendant). The grid box associated with criminal history score C and a severity level 7 allowed for an arson sentence of 25 to 29 months, with a presumption of probation. K.S.A. 2016 Supp. 21-6804 (sentencing guidelines grid for nondrug felonies). Thus Redick's second sentencing challenge also has merit.

Redick, however, is incorrect on his third criticism of the district judge. His claim that his sentence violates the double rule is meritless, because the rule is inapplicable to off-grid sentences. See *Brown*, 303 Kan. at 1005-06. Still, the first two errors Redick has identified mean that his sentence must be vacated and his case remanded for resentencing. This is necessary despite the possibility that he will be given a longer prison term. See *State v. Walker*, 283 Kan. 587, 616, 153 P.3d 1257 (2007) (remand for resentencing leading to longer sentence; no presumption of vindictiveness, given court's sound explanation of incorrect calculation of initial shorter sentence).

CONCLUSION

Defendant Andrew Charles Redick's challenges to his convictions are rejected, but his sentence is vacated and the case remanded for resentencing consistent with this opinion.

\* \* \*

BILES, J., concurring:  I agree with the majority opinion except on the jury trial waiver claim. As to that, I concur in the result. I would affirm the district court on this point as generically as it was argued in defendant's brief. I would further hold any argument about the trial court's alleged deficiency based on a more specific concern about potential juror bias was abandoned because it was not briefed. See Supreme Court

18

Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35) (appellant's brief must include "[t]he arguments and authorities relied on, separated by issue if there is more than one").

Redick only argued generally in his brief that the district court did not adequately advise him about the scope of his jury trial right before his waiver. He claimed the court failed to inform him of "his many rights." The only particular deficiency he drew attention to was that the district court "did not inform [him] of . . . the idea that twelve jurors must unanimously find Mr. Redick guilty beyond a reasonable doubt versus one district court judge deciding the facts."

But at oral argument, Redick showed up to assert that the real problem with the jury waiver colloquy was the trial court's failure to sufficiently explore with him his concern about potential juror bias. He said this should have caused the district court to better explain his right to an impartial jury and elaborate how the voir dire process guards against juror bias. The court's failure to do so, he asserted, rendered the colloquy inadequate and justified reversal.

When confronted, Redick conceded this was not argued in his brief. He excused that oversight by noting the hearing transcript reflected defense counsel's statement that Redick sought to waive his jury trial right because "he was fearful that it would be difficult to find a jury that will not be prejudiced against him." He said quoting the transcript in his brief should be good enough to appear before this court and assert for the first time his real concern about jury bias as the basis for reversing his conviction.

But hearing transcripts and records on appeal frequently provide factual support for arguments that are not advanced on appeal, and that is my problem. All Redick did in his brief was make a generic argument about plea waiver colloquies, while noting one flaw in particular—an alleged failure to inform him in greater detail that 12 jurors must

19

unanimously find him guilty beyond a reasonable doubt "versus one district court judge deciding the facts." Showing up at oral argument with something new is inexcusable. Appellate practice is not a seat-of-the-pants business. See *State v. Bowen*, 299 Kan. 339, 355, 323 P.3d 853 (2014) (holding when a litigant fails to adequately brief an issue it is deemed abandoned); see Rule 6.02(a)(5). We should not tolerate a litigant briefing one deficiency within a broad generic subject area and then claiming another at oral argument, nor should we address that concern in our decision.

As the majority points out, our caselaw gives an appellate court under specific circumstances discretion to address an issue raised for the first time on appeal. This practice has difficulties because appellate review is transformed into resolving a different case from the one the district court decided. See *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("'[T]oo often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them.'"). Those difficulties are made worse when the new complaint is not even specified in the appellant's brief.

Therefore, I would not walk the path set by Redick for the first time during oral argument by gratuitously stating, as the majority does, its preference that the trial judge should have "explained the steps that could have been taken to ensure the seating of a fair and impartial jury, whose participation in the process would be unadulterated by prejudicial pretrial news coverage." Slip op. at 12. Generic claims need not receive more detailed attention, particularly when a specific deficiency is the only one mentioned in the briefing. Arguments made for the first time at oral argument should not be rewarded with prompts from this court about best trial practices for our district courts.

Our rules put all litigants on notice they must articulate their claims with sufficient specificity to permit opposing parties and the court to know what the appeal is really

20

about. Concerns mentioned during trial court proceedings do not progress to the appellate courts by stealth. They need to be briefed, or they are abandoned.

NUSS, C.J. and STEGALL, J., join the foregoing concurrence.