NOT DESIGNATED FOR PUBLICATION

No. 123,695

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID AARON KELLY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; ROBERT J. BEDNAR, judge. Opinion filed March 4, 2022. Reversed and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Megan Williams*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: David Aaron Kelly stands convicted of aggravated intimidation of a witness after a bench trial. Because we find the district court failed to sufficiently advise Kelly of his right to a jury trial before accepting his jury trial waiver, we reverse Kelly's conviction and remand with directions. This reversal renders Kelly's remaining complaints moot.

Given the disposition of this appeal, the facts underlying Kelly's conviction are largely irrelevant. In summary, Kelly was charged with aggravated intimidation of a witness and aggravated assault related to an incident which occurred on July 24, 2018.

1

His jury trial was originally set to occur in October 2019. After several continuances and the recusal of the original trial judge, this date was pushed back to April 9, 2020. On March 18, 2020, however, all jury trials were suspended because of the COVID-19 pandemic. By July 17, 2020, Kelly had spent 529 days in custody, on this case and other charges. At one point Kelly moved to dismiss the charges on speedy trial grounds, but the district court found most of the delays were attributable to Kelly's changes in counsel and his request for recusal of his original trial judge.

Ultimately, Kelly appeared for trial on September 16, 2020. The record does not reflect how the matter became scheduled for this date, nor whether the parties intended the matter to be set for a jury or bench trial. The district court began the proceedings by asserting the parties were appearing for a bench trial and then mistakenly stated Kelly had already waived his right to a jury trial. After Kelly's counsel responded by pointing out that Kelly had not yet waived his jury trial right, but intended to do so at that time, the district court conducted a short examination of Kelly:

"THE COURT: You are waiving your right to a jury trial, Mr. Kelly?

"MR. KELLY: (Inaudible) I wanna do a bench trial.

"THE COURT: All right. And—and no one has—has anyone threatened you or promised you anything to get you to waive your right?

"MR. KELLY: No. I'm just tired of being in jail.

"THE COURT: Has anyone threatened you with any type of repercussions if you would not waive your right?

"MR. KELLY: No, sir.

"THE COURT: So—and the main reason is that you would like to speed up the process, if I understand you; is that correct?

"MR. KELLY: Yes, Judge Bednar.

"THE COURT: All right."

The district court then moved on to dispose of several pretrial motions filed by Kelly. After both parties waived opening statements, the court heard witness testimony.

The court found Kelly guilty of aggravated intimidation of a witness but not guilty of aggravated assault. The court sentenced Kelly to prison, relying on a presentence investigation report's summary of Kelly's criminal history which Kelly confirmed was accurate.

Kelly now challenges the sufficiency of the evidence supporting his conviction, as well as the district court's use of his prior conviction for criminal threat in calculating his criminal history score. We need not address either of these challenges since we are persuaded by Kelly's other argument on appeal: We agree Kelly's waiver of his jury trial right was ineffective since the district court did not properly advise Kelly of this right.

Before we address the substance of Kelly's argument, we must discuss our ability to review it on appeal. Although Kelly brought up whether he knowingly and voluntarily waived his right to a jury trial before the district court in a supplemental motion for a new trial, he argued different grounds in his motion than he alleges on appeal. While we question whether Kelly properly preserved this issue for appeal, the State does not. See *State v. Walle*, No. 104,224, 2012 WL 139267, at *3 (Kan. App. 2012) (unpublished opinion) (finding a prosecutorial misconduct claim was not preserved for appeal since different grounds were alleged to the district court than on appeal). Yet we need not address whether Kelly properly preserved this issue since we are persuaded that, even if Kelly did not, we may reach it for the first time on appeal because it implicates Kelly's fundamental rights.

Generally, appellate courts do not address issues raised for the first time on appeal but may do so when consideration of the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights. Not only is the right to a jury trial a fundamental right, but the Kansas Supreme Court has counseled that whether a court has advised a defendant of his or her right to a jury trial is one of the last issues that should be denied the opportunity for exceptional treatment. *State v. Redick*, 307 Kan. 797, 802, 414

P.3d 1207 (2018). We thus exercise our discretion to consider the sufficiency of Kelly's jury trial waiver on appeal. See *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017) (since preservation is a prudential rule rather than a jurisdictional bar, an appellate court may apply exceptions to that general rule).

*Standards governing jury trial waivers*

Both the United States Constitution and the Kansas Constitution guarantee a criminal defendant a right to a jury trial. U.S. Const. amend. VI; Kan. Const. Bill of Rights §§ 5, 10. Whether a defendant has waived this right is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, whether a defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review. *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020). We must strictly construe jury trial waivers to ensure that defendants have every opportunity to receive a trial by jury. *Redick*, 307 Kan. at 803.

All felony cases must be tried to a jury unless the defendant and the State, with the district court's consent, submit the matter to a bench trial. K.S.A. 22-3403(1). Two things must occur before a trial to the bench can take place: (1) The judge must clearly and unequivocally advise the defendant that he or she has the right to have the case tried by a jury and (2) if the defendant wishes to waive the right to a jury trial, the judge must determine whether that waiver is made freely and voluntarily. *Harris*, 311 Kan. at 376 (explaining the rule laid out in *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 [1975]).

Because there is a presumption that a criminal case will be tried to the jury, it is not enough for a judge to simply ask a defendant to make a choice between a trial to the judge or a trial to the jury. *Harris*, 311 Kan. at 376. The judge must follow the procedure laid out in *Irving* to guard against involuntary waiver and to "minimize the uncertainty

4

otherwise attendant to the determination of whether the defendant knowingly and intelligently waives a jury trial." 216 Kan. at 590.

The test for determining a waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends on the particular facts and circumstances in each case. *Irving*, 216 Kan. at 589.

*Sufficiency of Kelly's jury trial waiver*

Kelly claims that his waiver was not made knowingly since the district court failed to expressly advise him of his right to a jury trial. The district court did not make a declarative statement advising Kelly of the right or explain to him the nature of the jury trial right and how a jury trial differs from a bench trial. Instead, the district court simply asked him a few questions, which only touched on the reason Kelly was waiving (to "'speed up the process'") his right to a jury trial. Given Kelly's concerns about past delays in his case and the fact that Kelly waived his jury trial right at a time when jury trials were not being scheduled because of the COVID-19 pandemic, Kelly argues the district court should have done more to ensure that Kelly understood the right he was giving up and that he was not simply choosing the quicker option due to the exigent circumstance of the pandemic.

The State argues that Kelly's waiver of his jury trial right was valid, noting Kansas appellate courts have upheld jury trial waivers even when the district judge has not fully explained all the particulars of the right. In the State's view, the district court's inquiry here was minimally sufficient. The State argues it is enough that the district court referenced Kelly's right to a jury trial and ensured that his waiver was freely and voluntarily made, given that Kelly did not express any confusion about the nature of the right in his interactions with the judge.

There is no checklist or magic phrase that appellate courts should look for in considering whether a district court has sufficiently advised a defendant of the nature and extent of his or her constitutional right to a trial by jury. Instead, we must consider the surrounding facts and circumstances to determine whether the purpose of the *Irving* rule—that the district court satisfied itself that the defendant knows what rights he or she has and what he or she is giving up—is met. *State v. Beaman*, 295 Kan. 853, 860-61, 286 P.3d 846 (2012).

In support of its argument that a district court is not required to explain all the particulars of the jury trial right to a defendant before accepting the defendant's waiver of that right, the State relies on *Redick*, 307 Kan. 797. In *Redick*, the district court explained the jury trial right in basic terms to the defendant before accepting his waiver. Redick told the district court that he wanted to waive his jury trial right because he was afraid the media coverage of his case would make it difficult to find impartial jurors. Before accepting Redick's jury trial waiver, the district court informed Redick that he had "'a constitutional right to be tried by a jury of your peers in this community and the Court must provide that to you'" and asked him to confirm that he was waiving that right. 307 Kan. at 799.

On appeal, Redick claimed the district court had failed to sufficiently advise him of his rights before accepting his waiver, specifically arguing the district court should have advised him that a jury verdict must be unanimous. The Supreme Court rejected these arguments and held that the district court sufficiently advised Redick of his rights, noting that there was no requirement for district judges to articulate the jury-unanimity rule before accepting a defendant's jury trial waiver. *Redick*, 307 Kan. at 804-05. In explaining its ruling, the court found that while the district court's remarks "were not as expansive as they could be, they were minimally sufficient." 307 Kan. at 804. Although the Supreme Court would have preferred the district court to have explained the steps that

must be taken to ensure the seating of a fair and impartial jury, the omission did not render Redick's waiver invalid. 307 Kan. at 805.

But *Redick* is distinguishable because the district court in *Redick* explicitly advised the defendant that he had a right to a jury trial and explained what that meant in basic terms. Here, the district court only referred to Kelly's right to a jury trial; it did not explain the nature or extent of that right. What is more, Redick evidently understood he had a right to a trial by his peers since he explained he did not want a trial by those peers, whom he felt would not judge him fairly, based on media coverage. See 307 Kan. at 799-800. Kelly's waiver did not suggest he understood the nature of his jury trial right—it only reflected that he understood his trial would occur quicker if he chose a bench trial over a jury trial. While we do not judge the validity of a jury trial waiver on the grounds of expediency in general, we do find under these circumstances that the district court should have explained the nature of Kelly's jury trial right to ensure Kelly knew the substance of the right he was giving up simply to proceed to trial quicker. See *Beaman*, 295 Kan. at 860-61.

In *Beaman*, the Supreme Court considered the validity of a jury trial waiver where the district court did not explicitly advise the defendant of his right to a jury trial but engaged in a thoughtful exchange with the defendant that accomplished the same purpose. Beaman told the district court that he wanted to waive his right to a jury trial against the advice of his counsel. The district court asked Beaman to confirm that it was his desire to "'waive a jury for this trial'" and explained that "'the defendant is almost always better off taking a case in front of a jury.'" *Beaman*, 295 Kan. at 854. The district court then described some of the disadvantages of a bench trial and asked Beaman to give his reasons for waiving his jury trial right. After Beaman stated that he did not want to force the victim to testify, the district court explained that the victim and her family would still have to testify at a bench trial but would be testifying to the court instead of a jury. Once the district court made sure that Beaman understood this and still wanted to

waive his right to a jury trial, it accepted his waiver. On appeal, Beaman argued that his waiver was invalid because the district court assumed that he fully understood his jury trial right without explaining it to him.

In analyzing the validity of his waiver, the Supreme Court noted that Beaman was not explicitly advised by the district court that he had a right to a jury trial. The court explained, however, that while there may have been a missing element in the preferred "checklist" for accepting a waiver, the purpose of the missing element—that the court satisfy itself that the defendant knows what rights he or she has and what he or she is giving up—was met. *Beaman*, 295 Kan. at 860-61. Because the district court used the word "waiver," told Beaman he would be better off with a jury, and engaged in a thoughtful exchange with Beaman, the Supreme Court held that Beaman's jury trial waiver was knowing and voluntary, even though it never explicitly advised him of his right to a jury trial. 295 Kan. at 861-62. The district court had no such exchange with Kelly.

We find this case more analogous to *Harris*, 311 Kan. 371, than *Redick* and *Beaman*. In *Harris*, the Kansas Supreme Court reversed a defendant's conviction after concluding the district court failed to ensure the defendant understood the nature of the right he was giving up. The district court's exchange with Harris was minimal. Harris' counsel asked him whether he wanted a judge or a jury trial, to which Harris replied, "'Go with the judge. I want the bench.'" 311 Kan. at 373. After the district court asked Harris if he was requesting a jury trial, Harris responded, "'I'm asking for a bench trial.'" 311 Kan. at 373. Based on this exchange, the district court accepted Harris' waiver.

As in *Beaman*, the district court in *Harris* failed to explicitly tell the defendant that he had a right to a jury trial. Unlike *Beaman*, however, the district court in *Harris* did not even use the word "waiver" and failed to engage in any thoughtful exchange with the defendant to make up for this deficit. As the Supreme Court explained, the district court's

8

framing of the right to a jury trial as a mere option failed to recognize that Harris was entitled to a jury trial by default, without making any affirmative election. And once Harris expressed his preference for a bench trial, the district court simply accepted his choice and moved on without taking any steps to ensure that Harris understood the right he was giving up. Based on these facts, the Supreme Court held the district court failed to properly inform Harris of his right to a jury trial and ensure that he understood the nature of the right he was giving up. 311 Kan. at 377. Similarly, the district court simply referenced Kelly's jury trial right, without explaining that right or the nature of what Kelly was giving up in the name of expediency.

Admittedly, this case is a close call. But given that jury trial waivers must be strictly construed to ensure defendants have every opportunity to receive a trial by jury, we find that Kelly did not knowingly and voluntarily waive his right to a jury trial. We reverse Kelly's conviction, remand this case to the district court, and direct it to sufficiently advise Kelly of his right to a jury trial so he can either knowingly and voluntarily exercise that right or properly waive it.

Reversed and remanded with directions.