NOT DESIGNATED FOR PUBLICATION

No. 127,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERTO A. GALLEGOS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Finney District Court; REBECCA J. FAUROT, judge. Submitted without oral argument. Opinion filed December 19, 2025. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Nicholas C. Vrana*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

ISHERWOOD, J.: Following a bench trial, Roberto A. Gallegos stands convicted of multiple offenses, including aggravated assault of a law enforcement officer. He brings this appeal to dispute the sufficiency of the evidence the district court relied on to sustain his aggravated assault conviction and to challenge the validity of the waiver he entered in order to proceed with a bench trial rather than before a jury of his peers. We have carefully reviewed the record and did not detect any errors. Accordingly, Gallegos' convictions are affirmed.

1

Garden City Police Officer Randy Cole was on routine patrol when he observed a Chevrolet Silverado pickup that matched the description of one previously reported as stolen. Cole activated his emergency lights to conduct a stop but Gallegos, who was driving the truck, refused to yield and instead initiated an eastbound pursuit on Highway 50. The officer's dash camera recorded two patrol vehicles ahead: one on the right shoulder and another in the left lane, set up to deploy stop sticks—devices extended across the road and activated remotely via a string—with the vehicles acting as barriers.

Finney County Sheriff's Office Deputies Mayra Canto and Joe Barrientos Jr. were responsible for deploying the stop sticks. Deputy Barrientos, in a marked unit with lights flashing, activated his device from the right side, as recorded by his body and vehicle cameras. Deputy Canto, in uniform and near her marked patrol car with activated lights, extended her stop sticks across the left lane. As Gallegos approached, he swerved into the median as an evasive maneuver and veered toward Deputy Canto as she stood outside her vehicle. Canto's body camera captured her movements, which were also illuminated by the truck's headlights, as she retreated in fear of being struck by the pickup. Dash camera videos from Officer Cole and Sergeant Jason Hoke of the Finney County Sheriff's Office also captured the incident. The officers' pursuit of Gallegos concluded several miles later, and he was placed under arrest.

The State charged Gallegos with two counts of aggravated assault of a law enforcement officer, one count of theft, and one count of fleeing and eluding a police officer. During arraignment, the district court judge explained the differences between jury and bench trials and Gallegos expressed that he had greater confidence in the judge's ability to be impartial. Over his counsel's dissent, Gallegos elected to proceed with a bench trial and waived his right to a jury trial on the record.

When the day of trial arrived, Gallegos opted to represent himself. In so doing, he passed on the opportunity to provide an opening statement, conducted only perfunctory cross-examinations, raised no objections, presented no evidence or testimony, and waived closing argument.

The district court convicted Gallegos of theft, fleeing and eluding a police officer, and only one of the two counts of aggravated assault of a law enforcement officer. He was sentenced to serve a total prison term of 61 months and directed to register as a violent offender for 15 years following his release from custody.

Gallegos timely brings his case before this court for an analysis of the evidence undergirding his conviction for aggravated assault of a law enforcement officer. Additionally, he requests a determination of whether his jury trial waiver was legally sound.

LEGAL ANALYSIS

I. *When the evidence is reviewed in the light most favorable to the State, it was sufficient to establish that Gallegos was guilty beyond a reasonable doubt of the aggravated assault perpetrated against Deputy Canto.*

Appellate courts evaluate challenges to the sufficiency of the evidence by looking at the evidence in a light most favorable to the State, asking whether a rational factfinder could have found guilt beyond a reasonable doubt. This inquiry eschews reweighing evidence or credibility assessments. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). Reversal follows only if the evidence is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt. *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

To sustain a conviction for aggravated assault of a law enforcement officer the State's burden is two-fold. First, it must prove that Gallegos possessed the requisite mental state of knowingly committing the offense. See K.S.A. 21-5412(a), (d). A person acts knowingly with respect to the nature or circumstances of their conduct when such person is aware of the nature of their conduct or that those circumstances exist, and a person acts knowingly with respect to the result of their conduct when they are aware that their conduct is reasonably certain to cause the result at issue. K.S.A. 21-5202(i). A person also acts knowingly when they act intentionally, which occurs when it is the person's "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h) (defining what it means to act intentionally); see K.S.A. 21-5202(c) ("If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."); K.S.A. 21-5202(i). Knowledge may be proven through circumstantial evidence given that direct evidence of a person's mental state is often elusive. *State v. Gibson*, 311 Kan. 732, 742-43, 466 P.3d 919 (2020); see *State v. Douglas*, 313 Kan. 704, 716, 490 P.3d 34 (2021) (citing *State v. Corbett*, 281 Kan. 294, Syl. ¶ 6, 130 P.3d 1179 [2006]).

In addition to establishing that Gallegos acted with the requisite mental state, the State bears the burden to demonstrate that Deputy Canto had a subjective apprehension of immediate bodily harm and that such apprehension was objectively reasonable. *State v. Angle*, No. 116,152, 2017 WL 4216161, at *3 (Kan. App. 2017) (unpublished opinion). The Kansas Supreme Court has explained that the apprehension of bodily harm must be a fear the victim harbored for his or her own safety. *State v. Warbritton*, 215 Kan. 534, 537, 527 P.2d 1050 (1974).

Gallegos' evidentiary challenge arises out of the first prong of the State's burden. He contends that the State failed to provide any evidence to establish his awareness of Deputy Canto's presence, thereby vitiating the knowledge requirement. As support for his assertion, he endeavors to focus our attention on what he considers to be ambiguities in

4

the video—Deputy Canto's dark attire, her off-road stance, and dim lighting—and claims that footage captured on the dash cameras of the trailing officers demonstrates that the deputy was indistinct or absent until after they passed her vehicle. He further claims that his maneuver was calculated to avoid the stop sticks, not target Deputy Canto.

We have carefully reviewed the record and do not find Gallegos' arguments compelling. To the contrary, we are satisfied the State's evidence adequately demonstrated that Gallegos knowingly placed a uniformed law enforcement officer, Deputy Canto, in reasonable apprehension of immediate bodily harm by use of a deadly weapon—here, the stolen truck. See K.S.A. 21-5412(a), (d). Again, the requirement that the act be committed "knowingly" demands an awareness of the circumstances. See K.S.A. 21-5412(a), (d); K.S.A. 21-5202(i). In this case that would be an awareness of the deputy's presence. As we stated above, the State is not limited to the use of direct evidence when seeking to satisfy this aspect of its obligation; rather, the element may be inferred circumstantially. To that end, Gallegos' general awareness of the deputy's location, without exact precision, is sufficient. See K.S.A. 21-5202(i); *Gibson*, 311 Kan. at 742-43.

The evidence, viewed in the light most favorable to the State, satisfies these elements. Deputy Canto's body camera captured the truck's headlights illuminating her uniformed figure as Gallegos swerved directly toward her position in the median, forcing her to retreat in evident fear of being struck by the vehicle. This assessment is bolstered by Canto's testimony at trial when she described experiencing a reasonable apprehension of immediate bodily harm—a fear we have no hesitancy in concluding is plainly justified given that a swerving vehicle poses a lethal risk to a pedestrian officer. From Deputy Canto's vantage point, the truck's deliberate maneuver evinced an apparent desire to inflict bodily harm, rendering it a deadly weapon. See *State v. Lowe*, 317 Kan. 713, 719-20, 538 P.3d 1094 (2023) (manner of use controls).

5

As to knowledge, circumstantial evidence abounds to support the inference that Gallegos was well aware of the deputy's presence. The incident occurred at a point in Gallegos' flight from other officers where marked patrol cars with flashing lights were specifically positioned to act as barriers. Gallegos had already evaded other officers, suggesting an awareness of potential law enforcement activity ahead. His swerve into the median, and as his headlights revealed as they illuminated Deputy Canto's person, was precisely where she was positioned to deploy sticks. Those facts align with a purposeful maneuver toward the deputy. The general presence principle articulated in *State v. Wood*, 235 Kan. 915, 922-23, 686 P.2d 128 (1984), that a person's awareness that law enforcement officers are in the vicinity can suffice, is key here. Just as the shooter firing into a stairwell where he knew that officers were located warranted a conviction in *Wood*, driving toward marked police vehicles with their lights flashing while fleeing from law enforcement officers and then swerving toward a median that a uniformed deputy is visibly occupying is likewise sufficient to allow an inference of Gallegos' knowledge here. 235 Kan. at 922-23.

Gallegos attempts to distinguish *Wood* as involving a defendant with more precise knowledge of his victim's presence. He also misapplies *Lowe* by implying speed can mitigate the threat and by arguing that his truck is not inherently a deadly weapon, adding that just because he was driving it does not mean he intended to use it as a deadly weapon. But see *Lowe*, 317 Kan. at 719-20.

But these arguments falter under the standard of review, which requires the appellate court to view the evidence favorably to the State without reweighing it. *Mendez*, 319 Kan. at 723. While the dash camera footage from the other officers' vehicles depicts Deputy Canto as faint until one is already beyond her vehicle, it does not negate the inference that can be drawn from her own body and dash camera videos, nor does it serve to disavow the overall circumstances surrounding the incident: the illumination of Deputy Canto by Gallegos' headlights, her proximity during Gallegos' swerve, and the general

context of Gallegos' flight from the pursuing law enforcement officers. We have no hesitancy in concluding that a rational factfinder could infer knowledge and reject unawareness as implausible. See *Gibson*, 311 Kan. at 742-43.

The evidence, viewed in the light most favorable to the State, is sufficient to sustain Gallegos' conviction for aggravated assault of a law enforcement officer. His claim of an alleged lack of awareness does not negate the objective reasonableness of the deputy's fear or the apparent ability of his actions to cause harm. Visibility variances aside, a reasonable trier of fact could infer awareness and intent. Because the evidence sufficiently supports the judgment, we affirm.

## II. *Gallegos' jury trial waiver was made knowingly and voluntarily.*

The Kansas Supreme Court has clarified that whether a district court has advised a defendant of their right to a jury trial should be one of the last issues to be denied the opportunity for exceptional treatment under the preservation rule. E.g., *State v. Redick*, 307 Kan. 797, 802, 414 P.3d 1207 (2018). Although unchallenged below, the validity of an accused's jury trial waiver implicates fundamental rights and warrants a first-time review on appeal. *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020).

> "Whether a defendant waived the right to a jury trial is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review." *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012).

The records of the colloquies between the district court and Gallegos are not in dispute.

The Sixth Amendment to the United States Constitution, sections 5 and 10 of the Kansas Constitution Bill of Rights, and Kansas statutes guarantee a criminal defendant's right to a jury trial. *Redick*, 307 Kan. at 803; see K.S.A. 22-3403(1). Defendants may waive their right to a jury trial, but a district court's failure to obtain a proper waiver before conducting a bench trial or accepting a guilty plea arguably denies the accused their right to a jury trial and results in structural error. *State v. Bentley*, 317 Kan. 222, 232-33, 526 P.3d 1060 (2023); see K.S.A. 22-3403(1).

Gallegos was charged with two counts of aggravated assault of a law enforcement officer, a severity level 6 person felony, in violation of K.S.A. 21-5412(d)(1), (e)(4); theft, a severity level 7 nonperson felony, in violation of K.S.A. 21-5801(a)(1), (b)(2); and fleeing or attempting to elude a police officer, a severity level 9 person felony, in violation of K.S.A. 8-1568(b)(1)(B), (c)(2). Thus, he was entitled to a jury trial in accordance with K.S.A. 22-3403(1), which mandates that all felony trials be conducted before a jury unless the defendant and prosecuting attorney, with the district court's consent, agree to submit the matter to a bench trial. *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 550, 402 P.3d 1168 (2017).

A valid waiver requires the district court to engage directly with the defendant to confirm that they understand the nature of the right being waived. See *Harris*, 311 Kan. at 376. To ensure its dialogue with a defendant results in a legally sufficient jury trial waiver, the district court must: (1) clearly and unequivocally advise the defendant of their right to a jury trial, and (2) ensure the defendant personally waives that right in writing or on the record in open court. The waiver must be made freely, voluntarily, and with a full understanding of its implications. 311 Kan. at 376. Meeting this standard depends on the specific facts and circumstances of each case. *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012). A jury trial waiver is strictly construed to ensure the defendant has every opportunity for a fair and impartial trial by jury. *State v. Johnson*, 310 Kan. 909, 919, 453 P.3d 281 (2019) (quoting *Beaman*, 295 Kan. at 858).

In *Redick*, the Kansas Supreme Court upheld a jury trial waiver even though the district court offered only a rather minimal explanation of the right. 307 Kan. at 804 (collected cases). The court observed that while the district judge's remarks could have been more expansive, they were sufficient because the record showed that as a product of his interaction with the district court judge, Redick understood his right to a jury trial and actively chose to waive that right. Redick explained that publicity concerns coupled with the fear that a jury would not be fair or impartial, made a bench trial the more palatable option. The *Redick* court concluded that while a more thorough explanation of the jury trial process is the better course of action for a district court to take, the absence of such details did not render Redick's waiver unknowing or involuntary. 307 Kan. at 804-05.

*Harris* stands in stark contrast to *Redick* as it determined that the district court failed to properly inform Harris of his right to a jury trial, and thus there was no valid waiver. *Harris*, 311 Kan. at 377. In that case, Harris' attorney—not the district court—raised the possibility of a bench trial. The district court judge failed to engage in any meaningful discussion with Harris that explicitly notified him of his right to a jury trial or clarified that a jury trial was the default option. Instead, their colloquy centered on Harris' confusion about whether he wanted a jury or bench trial. Once Harris indicated a preference for a bench trial, the district court accepted his choice without taking any measures to ensure that he fully understood the right he was giving up. Additionally, the district court's framing of a jury trial as a "mere option" failed to adequately convey that Harris was entitled to a jury trial unless he explicitly waived it. 311 Kan. at 376. The Kansas Supreme Court ruled that the district court neglected to properly inform Harris of his right to a jury trial and did not verify that his waiver was made knowingly and voluntarily. Accordingly, reversal was necessary so the case could be remanded for the proper information to be communicated to Harris which, in turn, would enable him to determine whether a jury or bench trial was the better course of action under the facts and circumstances of his case. 311 Kan. at 376-77.

9

The requirements for a valid waiver—direct engagement with the defendant, strict construction in favor of the right, and a case-specific assessment of understanding—are plainly met on this record. See *Harris*, 311 Kan. at 376; *Johnson*, 310 Kan. at 919; *Beaman*, 295 Kan. at 858. The district court met these obligations through a comprehensive advisory process at arraignment and other pretrial hearings. It explained the jury trial right in detail: that a jury of 12 peers unanimously decides the question of guilt or innocence versus a bench trial where the judge is the sole factfinder, that the default presumption is a jury trial, and the consequences of waiving that right.

For his part, Gallegos personally affirmed his understanding of the right and unequivocally waived the same on the record, expressing his preference for a bench trial because he believed the judge possessed a greater capability for fairness—a reason he explained despite his counsel's explicit advice to the contrary. This deliberate, personal choice highlights voluntariness and awareness in a manner that is on par with *Redick*, where the district court's truncated advisory was not fatal given that Redick exhibited a clear understanding of his right to a jury trial and offered rational reasons in support of his decision to waive that right. 307 Kan. at 804-05. Unlike the district court's lack of direct interaction with the defendant in *Harris*, the district court in this case engaged Gallegos personally and confirmed his comprehension and voluntariness. See 311 Kan. at 376-77. We decline to find any error occurred.

Both rulings that Gallegos requested this court to analyze for error are legally sound and supported by the record. The evidence sufficiently supports his conviction for aggravated assault of a law enforcement officer and his jury trial waiver was validly executed.

Affirmed.

10