NOT DESIGNATED FOR PUBLICATION

No. 123,189

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRY W. CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed March 11, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., SCHROEDER, J., and JAMES L. BURGESS, S.J.

PER CURIAM:  The State charged Jerry W. Campbell with several crimes arising from an incident that occurred in May 2017. After arresting Campbell for an outstanding warrant, police searched him and found (1) an empty gun holster on his waist, (2) a repurposed paperclip with black residue on the end, (3) a Ziploc baggy full of loose change, and (4) three counterfeit bills in his wallet. An officer also smelled the odor of burnt marijuana on Campbell's person—both while Campbell sat in the car and after he exited the vehicle. After a search of Campbell's vehicle, various items related to methamphetamine, drug paraphernalia, and drug distribution were found. Campbell

1

moved to suppress the items found in the vehicle, citing the officer's lack of probable cause. After a suppression hearing, the district court denied the motion. Campbell later waived his right to a jury trial and informed the district court he wished to proceed with a bench trial on stipulated facts. The parties could not agree to the stipulated facts, so the district court proceeded with a bench trial on presented evidence. The district court found Campbell guilty of possession of methamphetamine with intent to distribute, two counts of felony possession of drug paraphernalia, one count of misdemeanor possession of drug paraphernalia, and forgery. Campbell appeals, arguing (1) the district court erred in denying his motion to suppress; (2) the district court erred in finding he knowingly and voluntarily waived his right to a jury trial; and (3) the State presented insufficient evidence to convict him of forgery. The district court's ruling on the suppression motion is affirmed. The district court's finding that Campbell waived his right to a jury trial is reversed, and the case is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, the State charged Campbell with: (1) one count of possession of methamphetamine with the intent to distribute, a severity level 2 drug felony; (2) two counts of use or possess with intent to use drug paraphernalia to manufacture, cultivate, plant, propagate, harvest, test, analyze or distribute a controlled substance, a level 5 drug felony; (3) one count of forgery, a level 8 nonperson felony; (4) two counts of possession of any firearm while addicted and using a controlled substance, a Class B select misdemeanor; and (5) one count of use or possess with intent to use drug paraphernalia to store, contain, conceal, inject, ingest, inhale, or otherwise introduce a controlled substance into the human body, a Class A nonperson misdemeanor.

After a preliminary hearing, Campbell was bound over for all seven charges. Campbell pleaded not guilty and asked the district court to set the matter for trial. In

2

November 2018, Campbell moved to suppress evidence found in his vehicle after his arrest. The State filed a written response.

At the motion for suppression hearing, Officer Matthew Roberts of the Lawrence Police Department testified that he arrested Campbell for an outstanding warrant and for driving on a suspended license. While talking to Campbell, who remained in the driver's seat of the car, Roberts smelled burnt marijuana. He could still smell it after Campbell exited the vehicle. He also made note of Campbell's hat depicting a marijuana leaf. Roberts searched Campbell's person and found (1) an empty gun holster on Campbell's waist, (2) a wire paperclip with burnt residue on the end of it that appeared to Roberts to be a marijuana pipe cleaning tool, (3) fake currency in Campbell's wallet found on his person, and (4) a little plastic baggy holding loose change that Roberts associated with drug distribution. Roberts testified he searched the vehicle because of the counterfeit money and "the smell of burnt marijuana coming from [Campbell] and/or the car." He stated he was looking for evidence relating to marijuana or paraphernalia, a firearm to accompany the empty holster, and evidence relating to equipment for making counterfeit money. When pressed later by Campbell's attorney, Officer Roberts testified he smelled the burnt marijuana smell when Campbell was in the car but that he searched the vehicle because of the burnt marijuana smell on Campbell's person.

During the suppression hearing, the State requested the district court incorporate Officer Roberts' previous testimony in a preliminary hearing, which the district court granted. In the preliminary hearing, Roberts testified he smelled "burnt marijuana emitting from the vehicle—and/or [Campbell]." After he searched Campbell incident to his arrest, Roberts searched the vehicle. He testified he searched Campbell's car in response to smelling the burnt marijuana.

The district court denied the motion to suppress, finding that the burnt marijuana smell, the wire paper clip with black residue, the baggy often used in drug distribution,

3

and the fake currency found in Campbell's wallet were enough to establish probable cause to search his vehicle. The district court found these items gave the officer probable cause to search for evidence of crimes related to possession of marijuana, possession of drug paraphernalia, and the distribution of counterfeit money. The district court rejected the State's argument that the empty gun holster on Campbell's person gave the officer probable cause to search specifically under K.S.A. 2020 Supp. 21-6301(a)(10), which makes it illegal for a person who is addicted to, and an unlawful user of, a controlled substance to possess a firearm.

In January 2019, Campbell waived his right to a jury trial and informed the district court he wanted a bench trial on stipulated facts. When he waived this right, Campbell had a draft of the State's proposed list of stipulated facts. And although Campbell had "at least one disagreement" with the State, "the fact of the matter is [Campbell wanted] to go ahead [with] a trial on stipulated facts with an open sentencing." The district court addressed Campbell directly:

> "THE COURT: All right. All right. Now, Mr. Campbell your attorney says you're going to waive your right to a jury trial and have this tried on stipulated facts. Is that what you want to do?
> "DEFENDANT CAMPBELL: Yes, ma'am.
> "THE COURT: You know you have the right to have a trial to a jury.
> "DEFENDANT CAMPBELL: Yes, Your Honor.
> "THE COURT: And have you had sufficient time to consider your decision and to discuss it with Mr. Crawford?
> "DEFENDANT CAMPBELL: I believe by the time we get to trial we will.
> "THE COURT: And, Ms. Kemple, since this is a felony the State also has to agree. Does the State waive the jury trial?
> "MS. KEMPLE: Yes, Judge."

Campbell and the State could never agree on a list of facts. The district court scheduled a bench trial for March 12th, 2019.

Before beginning the bench trial, the district court revisited Campbell's right to have a jury trial. The following colloquy took place:

"THE COURT: We're here for a Court trial. And I want to just ask this question one more time, Mr. Campbell. You know you have the right to have a trial to a jury. Does he not?

"MS. KEMPLE: He waived his right to a jury trial, Judge.

"THE COURT: I know. I want to do it again. I just want to be sure. Before we start a Court trial, you know you have that right.

"THE DEFENDANT: Even still today, Your Honor, like, I could choose to do a jury trial?

"THE COURT: No. I want to go back to what you did before—

"THE DEFENDANT: Yes, I understand.

"THE COURT: You know you waived that. I should have phrased, 'You know you waived that, right?'

"THE DEFENDANT: Yes, ma'am."

Thereafter, the case proceeded to a bench trial without stipulated facts.

At trial, Officer Roberts testified he was on patrol in May 2017, but in a stationary position on the 1800 block of East 19th Street in Lawrence at 8:10 p.m. He saw a bluish Ford Focus traveling west on 19th Street. From previous knowledge about this address and vehicle, Officer Roberts suspected Campbell was leaving the address and driving the vehicle. At the time, Officer Roberts knew the State had suspended Campbell's driver's license and that the City of Lawrence had issued a warrant for his arrest.

Officer Roberts followed the vehicle to 2220 Harper, where it parked in a parking lot near a convenience store. After parking his patrol vehicle roughly 25 to 30 feet away, he approached the vehicle. While he approached, the passenger of the vehicle exited the vehicle and walked over and sat on a curb. Roberts spoke to the driver, who he

5

recognized to be Campbell. Roberts asked Campbell if he had any weapons in the vehicle, to which Campbell replied that he had knives on him. Roberts asked Campbell who the backpacks in the backseat belonged to, and Campbell replied one was his and one was the passenger's.

Several other officers arrived on scene after Officer Roberts radioed for assistance. While he spoke with Campbell, who was still in the driver's seat, Roberts noted the smell of burnt marijuana through the open window. He asked Campbell to step out of the vehicle and then arrested him. Roberts also noted Campbell's hat had a marijuana leaf on the front, which he considered significant because of the burnt marijuana smell. While searching Campbell's person, Roberts found two counterfeit $20 bills in Campbell's wallet. Roberts believed the money to be counterfeit because the paper did not have the security strip going through it, the watermark was different, and the "feel" of the money was not right. He also said the one counterfeit bill had gotten wet at some point, which caused the ink to fade. Roberts also found a counterfeit $100 bill in the wallet that appeared to be peeling apart, did not have the security mark, and was of an odd texture and feel.

In one of Campbell's jeans pockets, Officer Roberts found a small plastic Ziploc baggy with loose change. While placing him in the patrol car, Roberts noticed Campbell was wearing a pendant and key on a necklace hanging around his neck. Roberts also noticed Campbell had an empty firearm holster on his waistband. When Roberts asked about the holster, Campbell replied that he left the firearm at home.

After placing Campbell in the patrol vehicle, Officer Roberts searched the vehicle for evidence related to the burnt marijuana smell and counterfeit money. Roberts found nothing of interest in the passenger's backpack.

6

In the front center console and underneath a stocking cap, Officer Roberts found a small, zippered black and red container which held two plastic baggies with yellow biohazard logos containing a white, crystalline substance. He also found a glass pipe with white residue inside the case. Based on his training and experience, Roberts believed this to be a pipe used to smoke methamphetamine.

Officer Roberts found a black and silver .380 Hi Point pistol in the passenger rear map pocket. The firearm had ammunition in the magazine, as well as a round in the chamber. In the backseat behind the driver's seat, officers found a black backpack. Inside the bag, Officer Roberts found a single shot Comanche .45 Long Colt pistol with a round in the chamber. Inside one side pocket, officers located two medium sized Ziploc baggies: one containing 88 smaller, empty Ziploc baggies; the other containing 44 smaller, empty Ziploc baggies. In the other side pocket, Roberts found several prescription bottles prescribed to Campbell.

Officer Roberts also found a large, purple Crown Royal bag around a locked black box in the backpack. Remembering the key and pendant necklace he noticed on Campbell earlier, Roberts returned to Campbell to retrieve the key. Roberts discovered the necklace was no longer around Campbell's neck. Roberts temporarily removed Campbell from the patrol car and found the key in Campbell's pocket, which he used to open the locked box.

Inside the box, Officer Roberts located a black zippered case, a blue Tupperware container, and a red bandana. The blue Tupperware container contained six baggies of white, crystalline substance and a notepad containing various inscriptions. In the black zippered case, Roberts found two measuring scoops, plastic baggies, and a digital scale. Roberts testified all the items in the zippered case had white residue on them. He later testified the number of empty baggies in the zippered black case to be 82.

7

Officer Roberts then testified he believed the notebook he found contained various narcotics-related ledgers. He testified he recognized some of the names written in the notebook as methamphetamine users and that someone had written dollar amounts as well next to the names. He also discussed the various slang terms for common measurements and types of narcotics.

Officer Roberts entered the items found into evidence and sent the crystalline substances to Kansas Bureau of Investigation (KBI) for chemical sample testing. After Roberts took Campbell to the law enforcement center, he read Campbell his *Miranda* warnings, which Campbell waived. Campbell spoke with Roberts, and during that interview Roberts asked Campbell whether he smoked any weed, to which Campbell replied, "'Mm-hmm. I always smoke weed. Oh, yeah, man, that's like my cologne.'"

Somiyeh Zalekian testified for the State as the forensic scientist with the KBI, who tested the 15 bags of white, crystalline substances. Zalekian testified that all 15 bags tested positive for methamphetamine and the total weight of all of the methamphetamine substance was 41.62 grams.

Lawrence Police Officer Kristen Kennedy testified to (1) the type and purpose of various drug paraphernalia, (2) how an item is used to ingest or distribute narcotics, (3) the typical amount of single-use methamphetamine, and (4) various drug-related slang. Kennedy sent the two firearms found in Campbell's car to the KBI for DNA testing once she obtained a search warrant to collect a known DNA sample from Campbell.

The State presented testimony from Lance Antle, a forensic biologist with the KBI, who tested the known DNA sample from Campbell against the firearms. Antle testified he found three separate DNA samples on the Hi Point pistol and that Campbell's DNA could not be excluded as a possible donor.

8

The district court found Campbell guilty of (1) possession of methamphetamine with intent to distribute, a level 2 drug felony; (2) possession of drug paraphernalia to manufacture, cultivate, plant, harvest, test, analyze or distribute a controlled substance, a severity level 5 drug felony; (3) possession of drug paraphernalia to store, contain, conceal, inject, ingest, inhale, or otherwise introduce a controlled substance into the human body, a level 5 drug felony; (4) forgery, possession with intent to issue or distribute a falsely made, altered, or endorsed written instrument and intent to defraud, a level 8 nondrug felony, and (5) possession of drug paraphernalia to store, contain, conceal, inject, ingest, inhale, or otherwise introduce a controlled substance into the human body, a Class A misdemeanor.

The district court sentenced Campbell to (1) a controlling 111 months of imprisonment with 36 months of postrelease for possession of methamphetamine with intent to distribute; (2) 11 months of imprisonment with 12 months of postrelease for felony possession of drug paraphernalia, to run concurrent with the controlling count; (3) 11 months of imprisonment with 12 months of postrelease supervision for felony possession of drug paraphernalia, to run concurrent with the controlling count; (4) 8 months of imprisonment with 12 months of postrelease supervision for forgery, to run concurrent with the controlling count; and (5) 8 months of imprisonment for misdemeanor possession of drug paraphernalia, to run concurrent with the controlling count.

Campbell timely appeals.

ANALYSIS

I. *Did the district court err in denying Campbell's motion to suppress?*

*Standard of Review and Preservation*

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

When the material facts supporting a district court's decision on a motion to suppress are not in dispute, the ultimate question of whether to suppress is a question of law over which this court has unlimited review. 307 Kan. at 827. The burden rests with the State to prove the lawfulness of the warrantless search and seizure. 307 Kan. at 827.

Generally, when the district court has denied a motion to suppress, the moving party must still object to the introduction of that evidence when offered at trial to preserve the issue for appeal. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). Because Campbell lodged a continuing objection to all evidence or testimony related to Officer Roberts' search of his car, Campbell preserved this issue for appeal.

*Applicable Law*

Under the Fourth Amendment of the United States Constitution and section 15 of the Kansas Constitution Bill of Rights, warrantless searches and seizures are per se unreasonable. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. For a search to be

reasonable, the officer must first have a warrant. *State v. Fewell*, 37 Kan. App. 2d 283, 285, 152 P.3d 1249 (2007). Therefore, the State must establish an exception to the warrant requirement to introduce evidence obtained as a result of that search against the accused. *State v. Hubbard*, 309 Kan. 22, 32, 430 P.3d 956 (2018).

Kansas recognizes several exceptions to the Fourth Amendment search warrant requirement. One such exception is the "search incident to lawful arrest" exception. *State v. Knight*, 55 Kan. App. 2d 642, 646, 419 P.3d 637 (2018). Another is "probable cause plus exigent circumstances." 55 Kan. App. 2d at 646. A subcategory of the latter is the "automobile exception." 55 Kan. App. 2d at 646. This exception was first recognized in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). The mobility of the vehicle provides the exigent circumstance. *Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999). This is because an individual's expectation of privacy regarding the vehicle is significantly less than the privacy expectation relating to one's home. *State v. Conn*, 278 Kan. 387, 395, 99 P.3d 1108 (2004). Even if the driver and passengers are removed from the vehicle at the time of the search, the vehicle is still considered "mobile" for purposes of this exception. See *Pennsylvania v. Labron*, 518 U.S. 938, 940-41, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996). With exigency established by the automobile exception, this court need only determine whether Officer Roberts had probable cause to search Campbell's car. See *Knight*, 55 Kan. App. 2d at 647.

This court reviews probable cause determination by considering the totality of the circumstances, which includes the facts and circumstances within the officer's knowledge based on reasonably trustworthy information, any fair inferences and other relevant facts, whether or not admissible on the issue of guilt. *Hubbard*, 309 Kan. at 35. For automobile searches, probable cause can be established if the totality of the circumstances indicated there was a fair probability that the vehicle to be searched contained contraband or evidence of a crime. 309 Kan. at 35.

11

Kansas appellate courts do not review motion to suppress issues on appeal under a divide-and-conquer analysis because the very nature of a "totality of circumstances" standard precludes that method of review. *State v. Ramirez*, 278 Kan. 402, 407-08, 100 P.3d 94 (2004). The court may not consider "each suspicious factor in isolation and [ask] whether there was an innocent explanation for the activity." 278 Kan. at 406-07. Although the evidence of an odor of marijuana is substantial, the court's analysis relies on all knowledge and observations of the officer at the time of the search.

The Kansas Supreme Court has held that "[n]ot all cases relying on odor will have the same result." *Hubbard*, 309 Kan. at 41. The reviewing court must look to the totality of the circumstances surrounding, and in addition to, the odor. See *State v. Ibarra*, 282 Kan. 530, 552-53, 147 P.3d 842 (2006) (holding that the odor of ether alone was insufficient to establish probable cause to search). The Kansas Supreme Court has held that the odor of marijuana coming from a vehicle, when detected by an experienced law-enforcement officer, can provide probable cause to search the passenger compartment of that vehicle. *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993); see also *State v. Delgado*, 36 Kan. App. 2d 653, 658-59, 143 P.3d 681 (2006) (finding that officer's detection of odor of marijuana coming from vehicle by itself provided probable cause to search passenger compartment); *State v. Dixon*, No. 98,881, 2008 WL 1847882, (Kan. App. 2008) (unpublished opinion) (reversing district court's order suppressing evidence and finding that experienced officer's detection of odor of raw marijuana coming from car was sufficient basis for probable cause to search vehicle). *Fewell* also underscored the importance of the officer's training and experience in recognizing the odor of marijuana. See 286 Kan. at 383.

Kansas caselaw suggests an officer may have probable cause to search after smelling either raw or burnt marijuana. In *State v. Kirk*, 40 Kan. App. 2d 817, 196 P.3d 407 (2008), an officer detected the smell of marijuana coming from a vehicle he had stopped for a traffic infraction. The *Kirk* panel held that, although it was unclear whether

12

it was raw or burnt marijuana, the district court had substantial evidence that the officer, who was trained in identifying the odor of marijuana, had smelled marijuana coming from the vehicle and therefore had probable cause to search the vehicle. 40 Kan. App. 2d at 820. In *State v. Goff*, 44 Kan. App. 2d 536, 239 P.3d 467 (2010), an officer detected the smell of raw marijuana while conducting a traffic stop. The *Goff* panel held that, without reweighing the evidence and credibility, the officer's testimony that he had smelled raw marijuana while conducting the traffic stop was sufficient proof that the officer had probable cause to search the vehicle. 44 Kan. App. 2d at 541.

*Application*

Campbell argues the district court erred in denying his motion to suppress because neither the items found on his person during the officer's search nor the burnt marijuana smell established probable cause. Campbell's brief on appeal begins by analyzing each factor the officer relied on individually. He then summarizes these analyses by arguing that, even altogether, the factors did not amount to probable cause to search. Campbell does not challenge the officer's experience in detecting marijuana odors. His argument centers on the fact that Officer Roberts testified he smelled the odor "on Mr. Campbell."

The State argued the district court properly dismissed Campbell's motion to suppress because the factors, under the totality of the circumstances, established probable cause for the search. The State chided Campbell for singling out each factor in his analysis, but then performed a similar individual analysis in its own brief. At any rate, the State maintains (1) the various items found, (2) the burnt marijuana smell, (3) the "conspicuously covered [] waistband [of a] gun holster," (4) the fact that Campbell's passenger was a "KDOC parolee," and (5) the "hat bearing 'a marijuana leaf'" was sufficient to establish probable cause to search. The State also argues the absence of paraphernalia or drugs on Campbell's person during the search incident to arrest, as it relates to a burnt marijuana smell, added to the totality of the circumstances.

13

In his reply brief, Campbell argues this court's review must be limited to the factual findings the district court actually relied on and must not consider findings the district court did not make. He maintains the four facts the district court relied on did not amount to probable cause, either individually or collectively.

To begin, the State had the burden to prove the lawfulness of the search in the motion to suppress hearing. *Hanke*, 307 Kan. at 827. On appeal, the State makes several statements supporting its argument that the officer had probable cause to search. Although the State cited the record to support its argument, the citations do not necessarily support the State's assertions. For example, although the State alleges the officer "knew Campbell's company, Scott Atkins, was a KDOC parolee," the State's evidence fails to clarify *when* Officer Roberts knew Atkins to be a parolee. The State's question was, "And at some point were you aware if Mr. A[t]kins was on KDOC parole?" The record does not support the notion that Roberts knew Atkins was a KDOC parolee at the time he *approached* Campbell. More importantly, the State does not explain why this fact is significant to the probable cause analysis. Caselaw suggests this fact does not matter. See *Fewell*, 286 Kan. 370, Syl. ¶ 5 ("A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

Additionally, the State cited the bench trial transcript with "see also" cites to support several arguments or argumentative statements. This court's review of a district court's ruling on a motion to suppress is generally based solely on the evidence presented at the suppression hearing. See *Knight*, 55 Kan. App. 2d 642, Syl. ¶ 1.

We also decline to consider the State's argument that the absence of evidence of a crime on an arrestee's person should be considered in the totality of the circumstances analysis. Essentially the State argues that the absence of evidence of a crime on an

14

individual's person helps establish probable cause for an officer to search for evidence of a crime elsewhere. Not only did the State not argue this lack of evidence circumstance to the district court, but this argument is counterintuitive to the purpose of a "totality of circumstances" analysis and the safeguards of the Fourth Amendment. An officer cannot further search for evidence upon the failure to discover evidence in the first instance. See *Knight*, 55 Kan. App. 2d at 646-48. Although the officer also testified to smelling burnt marijuana, the State's "lack of evidence" argument will not be considered.

Campbell did not argue to the district court, and does not argue on appeal, that Officer Roberts executed an unlawful search incident to arrest. Issues not raised to the district court or on appeal are deemed waived and abandoned. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). And because Campbell had at least one outstanding arrest warrant as well as a suspended driver's license, the arrest itself was lawful. As a result, the search of Campbell's person was incident to a lawful arrest. See *State v. Wissing*, 52 Kan. App. 2d 918, 922, 379 P.3d 413 (2016).

Campbell does argue Officer Roberts did not have probable cause to search for either raw marijuana or drug paraphernalia because he testified to only smelling burnt marijuana on Campbell's person and not specifically in Campbell's car. This is a meaningless distinction.

The district court allowed the State to incorporate Officer Roberts' testimony from the preliminary hearing into the suppression hearing, so the district court likely relied on both to make its decision. In the preliminary hearing, Roberts testified, "I smelled what appeared to be burnt marijuana emitting from the vehicle—and/or [Campbell]. I couldn't tell." Roberts testified that his response to smelling the marijuana was to search Campbell's vehicle. On cross-examination, Roberts confirmed he smelled the marijuana odor upon contact when Campbell was still seated in the vehicle. Roberts gave similar testimony in the suppression hearing, testifying he smelled the odor of burnt marijuana

15

coming from Campbell's "person" and that he first smelled it while Campbell was in the vehicle. He testified he was familiar with the odor of burnt marijuana because of his training and experience. Although Roberts testified Campbell's hat with a marijuana leaf on it was significant to him, it is unclear whether the district court relied on this testimony to make its decision.

But the distinction that Campbell asks this court to make does not naturally flow from the approach Kansas courts have applied in marijuana odor situations. Because an officer may rely on reasonably reliable information in making a probable cause determination, this court should consider the facts known to Officer Roberts at the time. See *Hubbard*, 309 Kan. at 35. Roberts witnessed Campbell drive a vehicle to another location with a suspended license. He then had contact with Campbell while he was still sitting in the driver's seat of that vehicle. At that time Roberts smelled burnt marijuana and asked Campbell about weapons. While arresting Campbell for the outstanding arrest warrant and driving on a suspended license, Roberts noticed Campbell's hat with a marijuana leaf, which was significant to him based on the burnt marijuana odor. While searching Campbell incident to his arrest, Roberts found a repurposed paperclip with burnt residue on the end in Campbell's pocket—which he knew by training and experience is commonly used to clean marijuana-related glass pipes. He also found counterfeit currency in Campbell's wallet and an empty gun holster on Campbell's person.

While it is true that Officer Roberts testified he smelled the marijuana on Campbell's body even after removing him from the vehicle, the officer still had enough information under the totality of the circumstances to believe there was a fair probability that Campbell had recently smoked marijuana and that evidence would be in the vehicle. See *Fewell*, 286 Kan. at 382 ("[T]he fact that [the officer] smelled *burnt* marijuana, rather than *fresh* marijuana, is particularly telling, in that it indicates that someone inside the vehicle had very recently engaged in criminal activity.").

16

With the very strong odor of burnt marijuana emanating from the car, it would seem to be a logical conclusion that the passengers smoked inside the car. It is very reasonable for a person of ordinary caution to suspect that evidence of a crime related to marijuana possession would be in the car from which the person smelling like marijuana was just removed. Subsequent removal of that person from the car does not then make the car unrelated to the detention. See *Labron*, 518 U.S. at 940-41. Once Officer Roberts smelled the odor of burnt marijuana on Campbell, there existed a fair probability that the car contained contraband or evidence of a crime. See *Hubbard*, 309 Kan. at 35.

Campbell did not challenge Officer Roberts' training and experience in drug seizures and detecting the odor of marijuana, either burnt or raw, in the district court. See *Fewell*, 286 Kan. at 383. Nor did he raise it on appeal. This court considers arguments not raised on appeal waived and abandoned. See *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014). Review of the transcript suggests Roberts' training and experience as a law enforcement officer rendered him sufficiently able to recognize the odor.

Although the burnt marijuana smell alone is sufficient to establish probable cause, a review of the totality of the circumstances further supports the finding of probable cause.

Based on the State's evidence, the district court found Officer Roberts had probable cause to search for evidence relating to three separate crimes: (1) possession of marijuana, (2) possession of drug paraphernalia, and (3) counterfeit money. The district court relied on the plastic Ziploc baggy, though it was holding Campbell's loose change at the time, as a fact contributing to Roberts' probable cause analysis. Because the baggy was being used for a seemingly innocent, and definitely lawful purpose, the district court may have improperly relied on it. See *State v. Jones*, 300 Kan. 630, 648, 333 P.3d 886 (2014) ("[T]here are a multitude of innocent uses for clear plastic bags and the presence of such a bag is not suspicious, at least by itself."). However, this single baggie is not

17

considered in isolation, and the totality of the circumstances support a finding of probable cause to search the automobile. The district court's decision to deny the motion to suppress is affirmed.

II.     *Did the district court err in finding Campbell knowingly and voluntarily waived his right to a jury trial?*

*Preservation*

There is no bright-line rule prohibiting criminal defendants from questioning the validity of their waiver of the right to a jury trial for the first time on appeal. *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016). While Campbell did not object to the district court's decision to enforce his previous wavier on the day of trial, this court may review the waiver. Kansas appellate courts have considered such a challenge raised for the first time on appeal to prevent the denial of a fundamental right. See *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012). "'[W]hether the court has advised a defendant of his or her right to a jury trial . . . should be one of the last [issues] to be denied the opportunity for exceptional treatment'" under the preservation rules. *State v. Redick*, 307 Kan. 797, 802, 414 P.3d 1207 (2018).

*Standard of Review*

> "'Whether a defendant waived the right to a jury trial is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review.' [Citation omitted.]" *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020).

18

*Applicable Law*

Both the United States Constitution and the Kansas Constitution guarantee a criminal defendant's right to a jury trial. U.S. Const. amend. VI; Kan. Const. Bill of Rights, §§ 5, 10. "There is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). K.S.A. 22-3403(1) requires that all felony cases be tried to a jury unless the defendant and prosecuting attorney, with the consent of the court, submit the matter to a bench trial.

Although the defendant may waive his or her right to a jury trial, this court strictly construes a defendant's waiver of that fundamental right to ensure he or she has every opportunity to receive a fair and impartial trial by jury. *Harris*, 311 Kan. at 376. District courts cannot accept a waiver unless the defendant, after being advised by the district court of his or her right, personally waives the right either in writing or in open court on the record. *Redick*, 307 Kan. at 803. "The choice whether to waive jury trial rests solely with the defendant." 307 Kan. at 803.

Caselaw on "conditional waivers" is almost nonexistent in Kansas. A conditional waiver has been addressed in the context of waiver of a speedy trial right to the effect that apparently a waiver can be subject to conditions as long as those conditions are explicitly stated. See *State v. Shockley*, 314 Kan. 46, 55-56, 494 P.3d 832 (2021) ("If the defendant chooses to waive his speedy trial rights and does not otherwise say so, we must presume the waiver is unconditional.").

A somewhat similar situation seemingly analogous to the present case was addressed in *State v. Schreiner*, No. 99,805, 2009 WL 1911685, at *5 (Kan. App. 2009) (unpublished opinion). In *Schreiner*, the State charged Joshua Schreiner with various sex offenses, which he agreed to plead no contest to in return for the State's favorable sentencing recommendation. At the plea hearing, the district court informed Schreiner

19

that, by entering his pleas, he was waiving important rights, such as he "'*will be* waiving or giving up many of your important constitutional rights including the right to a . . . trial by jury if you want one.'" 2009 WL 1911685, at *4. Schreiner answered yes to this and various other questions. While the State was giving a factual basis for the plea, Schreiner interrupted and withdrew his decision to enter the plea. The district court refused to accept a plea, and later scheduled a jury trial.

Three days before trial, the district court held a hearing on several pretrial motions. During this hearing, the State and Schreiner agreed to proceed by bench trial on stipulated facts. While advising the district court of the agreement, the State prosecutor stated: "'[*Schreiner*] *waived jury on his amended information*. We were prepared to go forward on the second amended information in October.'" 2009 WL 1911685, at *2. The district court did not again address whether Schreiner understood or waived his right to a jury trial. The district court merely described the difference between a trial with witnesses and the trial the court was about to proceed with based on stipulated facts. Schreiner agreed to the bench trial on stipulated facts.

On appeal, the State argued Schreiner waived his right to a jury trial at the plea hearing. Schreiner argued that the waiver was predicated on an unconsummated plea agreement, so he did not knowingly waive his right to a jury trial. The Court of Appeals agreed. Strictly construing the waiver of his fundamental right in his favor, the panel held that Schreiner's waiver could not be reasonably construed as "voluntary," given that the plea did not go through. 2009 WL 1911685, at *5. And as such, the waiver did not constitute a knowing and voluntary waiver for all future proceedings in the criminal case. Therefore, because the district court did not re-advise Schreiner on his fundamental right when the parties agreed to a bench trial on stipulated facts, the district court committed reversible error. 2009 WL 1911685, at *5.

*Application*

Campbell's waiver argument is two-fold. He first argues the district court erred in accepting the waiver because it was not fully informed. More specifically, when the district court asked him whether he had had enough time to speak with his attorney about his waiver decision, Campbell responded with, "'I believe by the time we get to trial we will.'" He argues this response should have suggested to the district court that he was confused or misunderstood the finality of the waiver. Campbell next argues the district court erred by enforcing his waiver on the day of trial because it was conditioned on his expectation of having a bench trial on stipulated facts.

The State argues Campbell clearly understood his rights and that the waiver was knowing and voluntary. The State argues in the alternative that Campbell's eventual bench trial with presented evidence made the failure to obtain the bench trial by stipulated facts "harmless." However, the "deprivation of the right to a jury trial is automatically reversible error." *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, 528, 154 P.3d 1170 (2007); see *State v. Roland*, 15 Kan. App. 2d 296, Syl. ¶ 5, 807 P.2d 705 (1991) ("[T]he right of a criminal defendant to a jury trial is so fundamental that a violation of that right cannot be harmless error.").

Couching the issue in terms of Campbell merely not getting the benefit of his bargain between the two types of bench trials is unpersuasive and not the true issue at hand. Whether or not Campbell knowingly and voluntarily waived his right to jury trial does not require analysis of the benefit he received by having the bench trial. Deprivation of this fundamental right cannot benefit from hindsight or harmless error. The same goes for the State's argument that Campbell's supposed refusal to agree on a set of stipulated facts is akin to "invited error."

21

The State also argued Campbell neither modified nor revoked his waiver. The State relies on older caselaw to make this argument and recent caselaw discussing statutory *speedy trial* waivers. Finally, the State argues Campbell is to blame for the failure to agree on the facts. The State supports this argument with the fact that the district court essentially warned Campbell if he could not come to an agreement with the State on the list of stipulated facts, the district court would hold a bench trial in which the court was the fact-finder.

In Campbell's reply brief, he insists that denying the accused a jury trial is a structural error not subject to either the harmless or invited error analyses. Campbell insists his waiver relied on his belief that a future bench trial would be based on stipulated facts, a benefit often sought by defendants.

Campbell fails to cite legal authority to support his argument that the right to a jury trial can be conditionally waived. A review of Kansas statutes and caselaw suggests Kansas appellate courts have not yet directly answered this question. *Schreiner* proposes somewhat similar circumstances, but it is an unpublished opinion so it is not binding on this court. Supreme Court Rule 7.04(g)(2)(B)(i) (2022 Kan. S. Ct. R. at 48) ("[Unpublished opinions may have] persuasive value with respect to a material issue not addressed in a published opinion of a Kansas appellate court."). Although the analysis in *Schreiner* appears to be fact specific, it is difficult to distinguish Campbell's scenario from that of Schreiner's. See *Schreiner*, 2009 WL 1911685, at *4-5.

The advantage of having a trial on stipulated facts is for the State and defendant to agree on the universe of facts presented to the fact-finder to make a legal decision on those facts alone. Campbell likely hoped to benefit from a bench trial on stipulated facts. See *Schreiner*, 2009 WL 1911685, at *1-2. Similar to the favorable sentencing agreement in *Schreiner*, the State agreed to Campbell's waiver and offered Campbell the opportunity to stipulate to a factual record. Just before that waiver, Campbell's attorney informed the

22

district court the State had already presented a drafted document of stipulated facts and that although they had one issue with it, Campbell intended to move forward with the bench trial based on stipulated facts. This suggests Campbell's waiver was predicated on his reasonable belief that he and the State could eventually agree to the stipulated facts. In fact, the gravamen of his argument is that his "knowing and voluntary" waiver was based on his *reliance* on this belief. The district court's later-in-time warning that the court would hold a bench trial with presented evidence is unpersuasive when this court must consider whether Campbell's waiver was knowing and voluntary when it was given. See *Harris*, 311 Kan. at 375.

Ultimately, the waiver must be knowing and voluntary, and it is difficult to believe a defendant knowingly and voluntarily waived that right in order to benefit from that waiver if that benefit never comes. See *Schreiner*, 2009 WL 1911685, at *4-5. The waiver occurred after the State gave him a draft of proposed stipulations. And although the parties disagree on the interpretation of statements made by both Campbell and his attorney in the status conference transcript, his apparent confusion on the day of the bench trial suggests he did not knowingly or voluntarily waive the right.

Because this court strictly construes Campbell's waiver to afford him every opportunity to receive a fair trial, it must be determined that Campbell's waiver was conditioned on his reasonable belief that he would receive the benefit of a bench trial on stipulated facts. If it was the district court's belief or intention that the waiver was to be effective regardless of whether a stipulation of facts was agreed upon, it was incumbent on the court to take the time to clarify Campbell's expectations and the court's perception of the effect of Campbell's waiver. The ultimate effect of the district court's interpretation of Campbell's waiver denied him the opportunity to determine if he wanted a jury trial absent a trial on stipulated facts. The "deprivation of the right to a jury trial is automatically reversible error." *Bannon*, 37 Kan. App. 2d at 528. We reverse Campbell's

23

convictions and remand with instructions to the district court to afford Campbell his constitutional right to a trial by jury.

Having determined that this case must be reversed and remanded for a new trial, we decline to address the issue of sufficiency of the evidence as to the conviction relating to the alleged counterfeit money.

Affirmed in part, reversed in part, and remanded with directions.

24