NOT DESIGNATED FOR PUBLICATION

No. 125,486

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLINTON D. DECAIRE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument. Opinion filed May 17, 2024. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., PICKERING, J., and TIMOTHY G. LAHEY, S.J.

PICKERING, J.:  This is the direct appeal of Clinton D. Decaire's five convictions for aggravated violations of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Decaire challenges both his jury trial waiver and the sufficiency of evidence to support his convictions. For his jury trial waiver issue—raised for the first time on appeal—we determine whether his decision to waive his right to a jury trial was free and voluntary. We find that it was.

1

For his sufficiency of evidence argument, he challenges that he had no duty to list his social media activities. He claims (1) KORA only imposes a duty on him to comply with the KBI's registration form, which did not ask for his social media, and (2) the KORA acknowledgement form, which asked for his social media, is not part of the registration form. Decaire asserts that the State should not be able to rely on this form in proving that he purposely omitted listing his Facebook page when he registered. We therefore consider his argument and determine whether a rational fact-finder could find Decaire guilty beyond a reasonable doubt. In answering these two questions, we find no error. We therefore affirm Decaire's convictions.

## DECAIRE IS CONVICTED AT A BENCH TRIAL FOR KORA VIOLATIONS

In late 2005, Decaire was convicted of three counts of rape under K.S.A. 21-3502(a)(2) and was adjudicated as a juvenile offender of a level 1 person felony. The adjudication initially required Decaire to register with the Kansas Offender Registry for five years, but that period was extended to lifetime registration by subsequent legislation. See K.S.A. 2011 Supp. 22-4906(h).

Between October 2016 and April 2019, Decaire completed 11 Kansas Offender Registration Forms (registration form). Each registration form contained an "Internet Information" box asking for "all email addresses/online identities/personal web pages/screen names/site affiliations/designations[.]" Each registration form required the offender's signature after reviewing the Acknowledgement of the Offender, hereafter referred to as the acknowledgement form.

Specific to this case, Paragraph 15 of the acknowledgement form stated:  "If I use the internet, I am required to report to the registering law enforcement agency any and all: email addresses; online identities; information relating to membership in any and all personal web pages or *online social networks* (emphasis added); and internet screen

2

names. *See K.S.A. 22-4907(a)(19)*[.]" Decaire was required to register changes in his registration information within three business days. See K.S.A. 22-4905(h).

Sedgwick County Sheriff's Deputy Reinhard Hay worked in the county's Offender Registration Unit between 2014 and 2020. Hay had occasional contact with offenders but mainly followed up on registration violations. In May 2019, Hay learned that Decaire had created a Facebook account in September 2016. For this account, Decaire listed himself as "Chevy Decaire." Hay confirmed that "Chevy" was Decaire's alias from inmate phone calls and Decaire's 2005 prosecution record. Hay did not detect illegal or inappropriate activity on the account, but Decaire had not included the Facebook account under the name "Chevy Decaire" on any of his registrations.

In June 2019, the State charged Decaire with five counts of aggravated KORA violations, alleging that Decaire failed to register his Facebook account as required by K.S.A. 22-4907 between 2016 and 2019. This case proceeded alongside another case where the State charged Decaire with six counts of aggravated indecent liberties with a child.

Along with presenting facts showing that Decaire had an unregistered Facebook account for over two years, preliminary hearing testimony generally described Decaire's registration compliance history. Decaire missed his registration deadlines in October 2015, July 2017, and January 2018. Additionally, Decaire had an unregistered phone number. After Hay called Decaire's registered phone number following his missed July 2017 registration, Decaire's father answered and gave a different, unregistered phone number where Hay could reach Decaire. Decaire included the phone number in his August 2017 registration. Further, Decaire had never registered his alias as "Chevy." The district court bound Decaire over for trial on all five charges after the preliminary hearing.

3

In Decaire's other case, a jury found him guilty of six counts of rape and two counts of aggravated indecent liberties with a child. Decaire received five life sentences in November 2021. Trial for the present case, with the same district court judge, was later set for February 7, 2022.

On February 3, 2022, Decaire filed a motion for change of judge in this case. Defense counsel explained that Decaire contended that during sentencing in his other case, the judge made an emotional display, which showed that he could not maintain impartiality and fairness in the current case. But because defense counsel did not notice the emotional display, defense counsel asked for Decaire to explain. Decaire said:

> "I absolutely do think that it affected the sentence. I believe that that was a definite factor in it. I clearly seen emotion. I clearly seen your voice crack. You had to wait. Your voice wavered. I seen it. That was one of the first things that me and my family talked about whenever I got back and I called them. So do I think it had an effect on the sentence, absolutely."

The district court denied the motion. The motion then went before the chief judge, who also denied it.

On the day the jury trial was set to start, the district court denied Decaire's requested continuance for further preparation and plea negotiations. Immediately after the continuance was denied, Decaire requested to waive his jury trial and set a bench trial date.

The district court then engaged Decaire to inform him of his right to a jury trial and asked a series of questions to see if he understood his waiver. During this exchange Decaire requested more time to speak with counsel. The district court allowed this and followed up with more questions before accepting the waiver and setting the case for a bench trial.

4

At the bench trial, three witnesses testified for the State: Hay; Lena Kastner, an offender registration unit employee; and Decaire's former partner Keela Chambers. Hay testified that the Facebook account was publicly viewable. He added that the work and residence information and account photos resembled Decaire's registration file. Kastner testified that the registration information is automatically filled in from prior registrations and offenders can add or subtract information by writing in or striking through information. She added that offenders complete the acknowledgement form at each registration and that she would have said to register a Facebook account if asked. Chambers testified that after high school she reestablished contact with Decaire when he messaged her on Facebook in 2016 or 2017. She knew that Decaire went by "Chevy." They entered a relationship around 2017 and regularly spoke over Facebook.

After the State rested, Decaire moved for a judgment of acquittal, citing insufficient evidence, which the district court denied. The court found Decaire guilty on all five counts.

At sentencing, the district court interpreted a defense counsel email as a request for reconsideration on the first recusal motion and then denied it. Decaire declined to request to have the chief judge review that denial. The district court sentenced Decaire to a controlling sentence of 233 months in prison to run concurrent with another criminal case.

I.       *The District Court Did Not Err in Accepting Decaire's Waiver of His Right to a Jury Trial*

*We will consider this issue although it is raised for the first time on appeal.*

Decaire argues that the district court erred in accepting his waiver of his right to a jury trial, but he did not raise this issue before the district court. Issues not raised before the district court generally cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are three exceptions to this rule:  (1) The newly asserted theory "involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2)" considering the theory is "necessary to serve the ends of justice or to prevent the denial of fundamental rights;" and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

Decaire contends that his jury trial waiver is reviewable despite raising it for the first time on appeal under the exception for claims necessary to serve the ends of justice or prevent denial of a fundamental right. He notes that Kansas courts have considered unpreserved challenges to jury trial waivers by applying the exception for preserving fundamental rights. See *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016); *State v. Beaman*, 295 Kan. 853, 857-58, 286 P.3d 876 (2012); *State v. Frye*, 294 Kan. 364, 371, 277 P.3d 1091 (2012). Indeed, our Supreme Court has recognized that "[t]he exception to the requirement of preservation of an appellate constitutional challenge—when consideration of an issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights—is applied to a claim that a criminal defendant's jury trial waiver was inadequate." *State v. Redick*, 307 Kan. 797, Syl. ¶ 1, 414 P.3d 1207 (2018).

For this case, because Decaire's waiver of the right to a jury trial is a factual question, we review under a substantial competent evidence standard. When the facts of the district court's acceptance of a defendant's jury trial waiver are undisputed, whether the defendant knowingly and voluntarily waived the right is a legal question reviewed de novo. *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020). Here, the facts of the district court's acceptance of Decaire's jury trial waiver are undisputed, and thus our standard of review is de novo.

*Decaire waives his right to a jury trial.*

Counsel had previously advised Decaire that she did not have a problem if he chose to waive and that she would continue discussing the case with him and negotiating with the State. The district court explicitly advised Decaire of his right to a jury trial, as shown with the court's discussion of the waiver with Decaire:

> "[THE COURT:]  So my question to you is do you wish to waive your right to a trial by jury?
> THE DEFENDANT:  Yes, I would like to waive my jury trial, sir.
> THE COURT:  Do you need any more time with [defense counsel] to address this? I'll just ask that.
> THE DEFENDANT:  Yes.
> THE COURT:  Do you understand what the significance of this is and what you are doing here today by waiving your right to a trial by jury?
> THE DEFENDANT:  I believe so. But I'd like—that's what I'd like to talk to her further about.
> THE COURT:  Well, I'll give you that opportunity now if you wish."

Decaire spoke with counsel off the record, after which his counsel advised the court that she did not think Decaire had any more questions. The district court then entered the following exchange with Decaire:

7

"THE COURT: Have you had sufficient time to talk with [defense counsel] about this? I believe you had been talking even before we came into court. Is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Do you need any more time to talk with her about that?

THE DEFENDANT: Not about that.

THE COURT: So I guess my question is do you believe you understand what you are doing in waiving your right to a trial by jury?

THE DEFENDANT: I believe so, yes, sir.

THE COURT: Very good. I'll accept your waiver. I'll find that it was voluntarily made. I'll also find that Mr. Decaire knows and understands what he is doing when he waives his right to a trial by jury."

*Decaire argues that his waiver was not free and voluntary.*

Decaire contends that the district court failed in ascertaining whether his waiver is free and voluntary. Decaire contends that he showed express or implied confusion three times: (1) by asking to waive his jury trial four days after moving for a change of judge; (2) by asking to waive his jury trial only to allow more time for counsel to prepare and negotiate pleas, thus confusing a continuance request with a jury trial waiver; and (3) by expressing doubt and requesting to discuss with counsel when asked if he understood the significance of his waiver. Decaire also argues that the district court should have found his waiver unknowing because the district court could not assume that Decaire's counsel accurately advised him of the consequences of waiving a jury trial or that he understood counsel's advice, and the district court passed onto defense counsel the court's responsibility to independently ascertain whether the waiver was free and voluntary.

*We review the protocol for accepting a defendant's jury trial waiver.*

A defendant's waiver of the fundamental right to a jury trial is "'strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by

8

jury.'" *Harris*, 311 Kan. at 376. Judges have two responsibilities: (1) to "clearly and unequivocally advise the defendant that they have the right" to a jury trial and (2) if the defendant conveys a desire to waive the jury trial, to ascertain whether the waiver is free and voluntary. 311 Kan. at 376. "'The test for determining a waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing.'" 311 Kan. at 376. Whether that test is satisfied depends on the facts and circumstances in each case. *Redick*, 307 Kan. at 803.

The district court should engage in a "'thoughtful exchange'" with the defendant about the nature of the right to a jury trial. *Harris*, 311 Kan. at 376. There is no "'checklist'" courts must adhere to when advising defendants of the right to a jury trial. 311 Kan. at 377. District courts cannot accept jury trial waivers unless defendants, after being advised by courts of their right to trial by jury, personally waive their right to trial by jury, either in writing or in open court on the record. *State v. Johnson*, 310 Kan. 909, 919, 453 P.3d 281 (2019). "The choice whether to waive jury trial rests solely with the defendant." *Redick*, 307 Kan. at 803.

On appeal, Decaire does not contend that the district court failed to inform him of his right to a jury trial. Rather, Decaire challenges the second prong of the district court's responsibilities under *Harris*, 311 Kan. at 376—ascertaining whether the waiver is free and voluntary.

*Decaire asserts he was confused.*

Decaire first argues that his decision to waive his jury trial after seeking to recuse the district court judge shows that he was confused about his rights. Decaire asserts that despite the district court's duty to address his apparent confusion or misconception, the court did not address the discrepancy between the request for a bench trial and the motion for change of judge the week before. He also argues that the court—upon taking his

9

waiver of a jury trial—should have advised him that the same judge would render the verdict. He does not cite to any Kansas caselaw in support of this last argument.

Kansas courts have ruled that should a defendant reveal confusion or misunderstanding about the right to a jury trial, the district court must address those misconceptions and try to explain and clarify the right before accepting a waiver. 311 Kan. at 377. Nevertheless, our Supreme Court has accepted jury trial waivers where the district court did not explain all of the details of the right to a jury trial, including details surrounding a defendant's stated reason for waiving a jury trial. See *State v. Lewis*, 301 Kan. 349, 377-78, 344 P.3d 928 (2015) (finding jury trial waiver valid despite judge's failure to inform defendant of attorney's ability to make challenges to jurors under *Batson v. Kentucky*, 476 U.S. 79, 88-89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 [1986]); *Beaman*, 295 Kan. at 859 (accepting waiver where district court did not explain unanimous verdict requirement); *State v. Clemons*, 273 Kan. 328, 340-41, 45 P.3d 384 (2002) (finding jury trial waiver knowing and voluntary when defendant represented himself, standby counsel advised court of defendant's wish to waive jury trial on day of trial, and defendant confirmed he had discussed waiver with standby counsel and wished to waive jury trial).

And in *Redick*, the defendant challenged his jury trial waiver because the district court did not explain to defendant—who was concerned about case publicity and jury impartiality—the steps courts take to ensure defendants in high-profile cases receive a fair jury trial. While the *Redick* court noted its preference that the district court explain the measures available to maintain a fair and impartial jury in light of the case's publicity, the failure to explain those details did not render the waiver invalid. 307 Kan. at 804-05.

Here, the jury trial waiver happened four days after Decaire moved to change the judge. The district judge did not explicitly address any disconnect between denying Decaire's motion to recuse him the week prior and then accepting Decaire's waiver of a jury trial to have the case heard and decided by the same judge. However, as part of the

district judge's initial statement to Decaire, the judge advised Decaire that "the Sixth Amendment gives you a right to a trial by jury, a judge or a jury but in this case a jury." This statement indicates that Decaire was on notice that the alternative to a jury trial was a trial to the judge. We find Decaire's first argument that he was confused by waiving his jury trial the week after moving to change the judge unpersuasive.

Second, Decaire submits that he asked to waive his jury trial only after the district court denied his motion for a continuance so that he could have more time to prepare and negotiate a plea. Decaire argues that the district court failed to correct his misconception that waiving his jury trial would give him a continuance. Here, the waiver also occurred immediately after the district court denied Decaire's request for a continuance. In response, the State also confirmed that it made no promises—including for a continuance—in exchange for the waiver. It is thus unlikely that Decaire confused the continuance with his jury trial waiver. Rather, the record shows that Decaire was motivated to request the waiver because he wanted more time before the trial. The colloquy between the judge and Decaire regarding his waiver of a jury trial also does not support his argument. It does not follow that Decaire was confused between a continuance and waiving his right to a jury trial. We thus cannot agree with Decaire's argument that he misunderstood his waiver as a continuance request.

Third, Decaire argues that expressing doubt and requesting to speak further with his attorney indicates confusion. But the record shows the district court allowed Decaire time to speak with his attorney and, when Decaire indicated he had had sufficient time, the court asked if he needed more time. Opportunities for defendants to speak with counsel suggest a free and voluntary waiver. See *Lewis*, 301 Kan. at 378.

In this case, Decaire was able to speak with his attorney after the district court asked if he understood the significance of his waiver. Further, Decaire's attorney advised the court that Decaire had no further questions regarding his waiver. And the district

11

court confirmed that Decaire's waiver resulted from ongoing conversations with counsel about waiving a jury trial.

Considering the opportunities that Decaire had to discuss his waiver with counsel, including Decaire's discussions before arriving in court and the off the record discussion, strongly shows that Decaire's waiver was made freely and voluntarily. Decaire invoked his waiver on the day of trial and never sought withdrawal. And the district court followed up with Decaire, asking if he needed any more time to discuss with counsel and if he understood what he was doing. Decaire's assertion that the district court could not assume that Decaire's counsel accurately advised him of the consequences of waiving a jury trial is without support. Nor does our review of the record indicate the district court ignored its responsibility to ascertain whether Decaire's waiver was free and voluntary. Moreover, we can look at Decaire's responses to the court's questions. For instance, when asked if he needed more time to talk with counsel, Decaire answered, "Not about that." And when asked if he believed he understood what he was doing, he responded, "I believe so, yes, sir." Those answers could be interpreted as equivocating or as simply restating the wording of the district court's questions in Decaire's answers.

We therefore find that Decaire was not confused when he waived his right to a jury trial. We uphold his jury trial waiver because his waiver was made freely and voluntarily.

II.     *There Was Sufficient Evidence to Support Decaire's Five KORA Violation Convictions*

Decaire contends there was insufficient evidence to support his convictions. He was convicted of KORA violations because he failed to list his activities on social media, namely his Facebook account. He claims (1) KORA only imposes a duty on him to comply with the KBI's registration form, which did not ask for his social media, and (2)

12

the acknowledgement form, which asked for his social media, is not part of the registration form. The State responds that this is a new argument that the KBI is not complying with K.S.A. 22-4907(a) and not an insufficiency of the evidence argument.

In addressing Decaire's argument, we will need to determine what KORA considers as the registration form and what duties these KORA provisions imposed on Decaire. Therefore, we construe Decaire's argument as a sufficiency challenge rather than a new, unpreserved argument, as the State argues.

*Sufficiency of the Evidence Regarding Kansas Offender Registration Offenses*

As this case requires our interpretation of KORA statutes, in determining the sufficiency of evidence, we have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021). The most fundamental rule of statutory construction is that the intent of the Legislature governs if it can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind the language and should avoid reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). "'Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history . . . to construe the legislature's intent.'" *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018). Both parties contend that the statutory language is unambiguous.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the

defendant guilty beyond a reasonable doubt.'" *State v. Frierson,* 298 Kan. 1005, 1010, 319 P.3d 515 (2014). "'An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

*Decaire's KORA Duties when Reporting as an Offender*

A KORA violation occurs when an offender fails to comply with any KORA provisions, including any duties listed in K.S.A. 22-4905 through K.S.A. 22-4907. K.S.A. 22-4903(a).

To establish an aggravated KORA violation, the State had to prove four things:

(1)     Decaire was adjudicated as a juvenile offender of a crime requiring registration,

(2)     Decaire failed to provide all internet information required by K.S.A. 22-4907(a)(19),

(3)     Decaire's failure began on a date certain and continued for more than 180 consecutive days, and

(4)     Decaire was required to register as an offender in Sedgwick County, Kansas.

See K.S.A. 22-4903(a)-(b); PIK Crim. 4th 63.150 (2022 Supp.).

Decaire's insufficiency of the evidence challenge rests on two contentions. First, he argues that K.S.A. 22-4907 does not impose a duty on offenders other than complying with the registration form itself. Decaire asserts that the accompanying acknowledgement form, which also discusses providing the offender's social media accounts, is not part of the registration form. Second, he maintains that the registration form does not ask the

14

offender to disclose his or her social media accounts. As such, Decaire challenges the requirement that he list his Facebook account or other social media activities when completing his offender registration. Without this requirement, he argues, he would not violate his registration duties listed in K.S.A. 22-4905 through K.S.A. 22-4907 and the State, therefore, failed to present sufficient evidence.

Decaire first argues that K.S.A. 22-4907(a) only imposes a duty to comply with the registration form. Essentially, Decaire's argument asserts that an offender's only duty is to comply with the KBI's approved registration form. He argues that because the offender only has a duty to comply with the form, the offender cannot be held liable for omissions of information that the form does not ask for, such as social media accounts. He contends that because the registration form did not ask for "online social networks" in its "Internet Information" section, he complied with the registration form, thus fulfilling his statutory duty. Decaire also blames the KBI for an omission on the registration form—not specifically listing "online social networks"—and there is no duty to correct the KBI's omissions on its form.

Decaire also notes that the registration form contains the KBI's seal, but the acknowledgement form does not. Decaire notes that K.S.A. 22-4907(a) states that registration "shall consist of a form," contending that "a" means registration consists of a single form and "shall" means that this limitation is mandatory. Decaire further contends that the executive branch has no authority to expand Decaire's statutory duty and require him to fill out multiple forms. Thus, the acknowledgement form is irrelevant to whether Decaire violated KORA.

It is important to note the State's response. On the State's first contention against Decaire's statutory interpretation, it argues that K.S.A. 22-4907(a) requires the registration form to include the acknowledgement portion at each registration. Therefore, the registration form includes the acknowledgement form. It also notes that the

acknowledgement and social media requirements listed in K.S.A. 22-4907(a) appear in the acknowledgement form. The State explains that the registration form's "site affiliation/designation" language encompasses a Facebook account. Therefore, the KBI fulfilled its duty to require Decaire's Facebook account in his registrations. The State also contends that K.S.A. 22-4905(c) requires offenders to provide the information required by K.S.A. 22-4907, thereby imposing an independent statutory duty on Decaire, which he violated.

The State secondly responds that overwhelming evidence supports the convictions. It notes that the factual dispute over whether the acknowledgement form is part of the registration must be resolved in the State's favor, establishing that the registration form includes the acknowledgement form. The State further notes the evidence that Decaire created but never registered his Facebook account, signed the acknowledgement form which requests its disclosure, would have been told to register the account if he had asked, and that the registration process was not onerous.

First, we begin with the offender's general registration requirement. An offender required to register under KORA shall "provide the information required for registration as provided in K.S.A. 22-4907 . . . and verify all information previously provided is accurate." K.S.A. 22-4905(c).

We next turn to K.S.A. 22-4907(a), which states: "Registration . . . shall consist of a form approved by the [KBI], which shall include a statement that the requirements provided in this section have been reviewed and explained to the offender, and shall be signed by the offender . . . ." The plain language means that K.S.A. 22-4905(c) and K.S.A. 22-4907 work in harmony.

The registration form shall include the following information: "any and all: E-mail addresses; online identities . . . ; information relating to membership in any and all

16

personal web pages or online social networks; and internet screen names." K.S.A. 22-4907(a)(19). Given its ordinary meaning, "online social networks" includes social media accounts such as Facebook.

The information required for registration under K.S.A. 22-4907(a)(19) includes "membership in any and all . . . online social networks," thereby creating a statutory duty on offenders to provide their social media accounts at registration. Therefore, KORA imposed a statutory duty on Decaire, which he violated. Decaire's contention that he did not have a statutory duty to provide his Facebook account at registration fails.

We next move to the acknowledgement made by the offender when registering. KORA's language indicates that the registration form includes an acknowledgement. See K.S.A. 22-4907(a). As stated above, K.S.A. 22-4907(a) requires the registration form to "include a statement that the requirements provided in this section have been reviewed and explained to the offender." Each registration form contained a box stating:

> "ATTENTION! BEFORE SIGNING, READ ACKNOWLEDGEMENT OF THE OFFENDER.
>> I have reviewed the Acknowledgement of the Offender and understand these duties under the Kansas Offender Registration Act.
>> I have provided truthful information which is contained above. I declare, verify and certify under the penalty of perjury that the foregoing is true and correct, executed on _____ (date)."

The acknowledgement form required the offender's initials next to each paragraph. In this case, the State presented the first acknowledgement form signed by Decaire dated October 31, 2016, which contained a box stating:

> "I hereby sign this statement to attest and agree that the information contained in my registration form has been provided by me and is true and correct. If I have

17

misrepresented myself, falsified any information, left out critical and truthful information required of me, or interfered with official duties of the law enforcement agency who registered me, I will be held accountable for criminal charges against me and will be punished for the offense(s). I have read the application and I have initialed the relevant areas to indicate I understand them. I verify that I have read the above rules and requirements regarding my registration as an offender, and the requirements have been explained to me, and I completely understand them and the consequence(s) for failure to comply."

On each subsequent acknowledgement, the box on the second page of the acknowledgement contained another sentence stating: "Further, I have been given the opportunity to have any questions answered today reference my requirements."

This language shows that the registration form incorporated the acknowledgement form, as required by K.S.A. 22-4907(a), by requiring offenders to review the acknowledgement before they could complete the registration form. Viewing the evidence in a light most favorable to the State, a rational fact-finder could conclude that the KBI's registration form included the acknowledgement form.

The State's witnesses similarly allow a rational fact-finder to conclude that the registration form includes the acknowledgement form. Kastner testified that offenders complete the acknowledgement form each time they register, and it is always included on each registration. She added that she was familiar with other offenders registering their Facebook accounts. Kastner did not discuss Decaire's Facebook account with him but would have discussed registration requirements if he had questions and would have told him that he had to register the Facebook account.

Hay testified that he did not recall meeting or speaking to Decaire but would have told offenders that they needed to register Facebook accounts if they asked. This testimony similarly shows that the acknowledgement form and registration form were

18

intertwined at each registration and that other offenders understood the requirement of registering social media accounts.

As noted above, the State also contends that the "site affiliation/designation" language in the registration form includes social media accounts. Decaire contends in his reply brief that the ordinary meanings of "affiliation" and "designation" do not fit a Facebook account. Affiliation is defined as (1) "affiliating or being affiliated," or (2) "connection, as with an organization, club, etc." Webster's New World College Dictionary 23 (5th ed. 2016). But Facebook is a social network. Not surprisingly, the well-known movie, *Social Network,* is about how Facebook came to be a highly popular online social group.

Creating a Facebook account ordinarily would make a person affiliated or connected with other Facebook members. KORA, therefore, imposed a statutory duty on Decaire to register his Facebook account, which he violated. Moreover, viewing the evidence in a light most favorable to the State, a rational fact-finder could conclude that the registration form includes the acknowledgement form and that Decaire was guilty beyond a reasonable doubt.

To conclude, we find that Decaire was not confused when he agreed to waive his right to a jury trial. We also find Decaire's insufficiency argument unpersuasive. We find that a rational fact-finder would find beyond a reasonable doubt that Decaire had violated his registration duties when he failed to list his Facebook account when registering as a KORA offender.

Affirmed.