NOT DESIGNATED FOR PUBLICATION

No. 128,448

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRISS M. CLAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument. Opinion filed March 27, 2026. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Criss M. Clay entered a guilty plea to several felonies in a plea agreement encompassing three cases. At sentencing, the district court denied Clay's objections to his criminal history score. Finding no reversible error, we affirm the district court's inclusion of Clay's two prior criminal threat convictions as person felonies in his criminal history calculation.

## FACTUAL AND PROCEDURAL HISTORY

In July 2023, the State charged Clay with four counts of forgery and two counts of identity theft—all felonies—across three separate cases in Sedgwick County: 23CR1546 (Case 1), 23CR1547 (Case 2), and 23CR1548 (Case 3). Clay subsequently agreed to plead guilty to most of the charges, except for a forgery count in Case 2 that the State agreed to dismiss. The presentence investigation (PSI) report created for Clay showed his criminal history score was B, based on two person-felony convictions for criminal threat in 2011 and 2017, which are the subject of this appeal.

Before sentencing, Clay filed a notice objecting to his criminal history score and asserting a "good faith belief" that the criminal threat convictions were not scorable but also noting that he could not determine from the face of the information contained in the PSI report whether the criminal threat convictions should be scorable. The issue was fully argued before the district court. The district court found his convictions were properly scored. It found that although our Supreme Court had found the reckless criminal threat section of K.S.A. 21-5415(a)(1) unconstitutional in *State v. Boettger*, 310 Kan. 800, 820, 450 P.3d 805 (2019), the United States Supreme Court had, in essence, overruled the Kansas decision in *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). The court reasoned that since K.S.A. 21-5415(a)(1) is now constitutional under *Counterman*, Clay's prior convictions under that statute can be scored.

In the alternative, the district court found that the plea transcripts and charging documents provided a sufficient factual basis to count both convictions, explaining that each offense "clearly" involved intentional conduct on Clay's part, despite being charged in the alternative with reckless conduct. Thus, the court found Clay's criminal history score to be B.

The district court imposed a controlling sentence of 43 months across all three cases but also granted Clay's motion for a dispositional departure, ordering an 18-month probation term.

Clay timely appealed.

ANALYSIS

I.    THE DISTRICT COURT DID NOT ERR WHEN IT INCLUDED CLAY'S CRIMINAL THREAT CONVICTIONS IN HIS CRIMINAL HISTORY AS PERSON FELONIES

*Convictions for reckless criminal threat cannot be included as person felonies in the calculation of a defendant's criminal history score.*

Clay challenges the district court's inclusion of his 2011 and 2017 criminal threat convictions in his criminal history. He argues his sentence is illegal because the district court misused his prior criminal threat convictions when calculating his criminal history score, despite the Kansas criminal threat statute having been ruled partially unconstitutional by the Kansas Supreme Court.

Our review of Clay's sentencing challenge is unlimited because it involves statutory interpretation and raises an illegal sentence claim. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). A sentence is illegal if it (1) is imposed by a court lacking jurisdiction, (2) fails to conform to applicable statutory provisions, or (3) is ambiguous with respect to the time and way it is to be served. K.S.A. 22-3504(c)(1). Clay's criminal history challenge is properly before this court because an illegal sentence may be corrected at any time while the defendant is serving such sentence. K.S.A. 22-3504(a).

3

A sentencing court must include any previous felony and misdemeanor convictions when calculating a person's criminal history for the purpose of sentencing. K.S.A. 21-6810(c). But "[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." K.S.A. 21-6810(d)(9). Stated another way, because the last clause in K.S.A. 21-5415(a)(1) was declared unconstitutional in *Boettger*, it cannot be used in calculating Clay's criminal history score, regardless of whether the same statute was later found to be constitutional. So any convictions for reckless criminal threat could not be included as person felonies in the calculation of Clay's criminal history score. See *State v. Smith*, 320 Kan. 62, 91, 563 P.3d 697 (2025). The district court's ruling to the contrary was error. But that does not end our inquiry.

> *If the State can establish that Clay's criminal threat convictions arose under the portion of the statute not previously declared unconstitutional, they can be scored for criminal history purposes.*

There is still an avenue for including a defendant's prior criminal threat convictions if it can be shown that such conviction arose under the portion of the statute not previously declared unconstitutional—the intentional conduct portion. *Smith*, 320 Kan. at 91.

Because Clay challenged the inclusion of his prior criminal threat convictions before sentencing, the State had the burden of proving by a preponderance of the evidence that Clay's convictions were based on intentional conduct. K.S.A. 21-6814(c). "[P]reponderance of the evidence" is defined as "'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). This court reviews a district court's decision that the State met its burden to prove the classification of a prior conviction for substantial competent evidence. *State v. Corby*, 314 Kan. 794, 796, 502 P.3d 111 (2022).

4

To meet its burden below, the State relied on copies of the plea hearing transcripts for Clay's two prior criminal threat convictions, which Clay had submitted in support of his criminal history challenge, as well as the language of the amended complaints associated with each of Clay's prior convictions. The amended complaints in both cases included both the intentional and reckless conduct language found in the statute.

Based on its review of the plea hearing transcripts, the district court concluded both of Clay's prior criminal threat convictions "clearly" involved intentional conduct despite being "charged in the alternative." Clay does not directly challenge the district court's finding that the transcripts and the complaints show intentional conduct, so that factual finding is unassailable.

*Clay cannot challenge an illegal sentence on constitutional grounds.*

Instead of contesting the factual finding of intentional conduct, Clay contests the district court's authority to make that finding. He contends the district court could not make a factual determination that he was convicted of intentional criminal threat because such a determination violates the Sixth Amendment to the United States Constitution, as well as sections 2, 5, and 10 of the Kansas Constitution Bill of Rights. He sums up his argument in two different portions of his appellate brief.

"To determine whether he engaged in intentional (as opposed to reckless) conduct, the district court engaged in fact-finding that went well beyond identifying the elements of the prior convictions. The result is a violation of his federal constitutional rights.

. . . .

"The district court erred by employing judicial fact finding and incorrect statutory interpretation to include Mr. Clay's prior criminal threat convictions in his

5

criminal history score, erroneously raising it from E to B. That error resulted in an unlawful sentence."

To be clear, Clay concedes in his brief that judicial factfinding regarding the existence of a prior conviction is permitted under the Sixth Amendment without running afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). But he contends that determining whether he engaged in intentional or reckless conduct for his prior criminal threat convictions exceeded that "limited" exception. Clay asserts the court could not delve into prior records to determine what he "'actually d[id].'" *Erlinger v. United States*, 602 U.S. 821, 839-40, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024); see also *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 7, 350 P.3d 1054 (2015) (*Dickey I*) ("The constitutional protections described in *Apprendi* . . . are implicated when a district court, for purposes of enhancing a defendant's sentence for a current conviction, makes findings of fact at sentencing that go beyond merely finding the existence of a prior conviction or the statutory elements that made up the prior conviction.").

More importantly, the precise nature of Clay's alleged Sixth Amendment violation makes it different from the typical criminal history challenge because he is challenging more than just the classification of his prior convictions. As the Kansas Supreme Court explained in *State v. Dickey*, 305 Kan. 217, 221, 380 P.3d 230 (2016) (*Dickey II*), "the proper classification of a prior crime is exclusively a matter of state statutory law," meaning a misclassification results in an illegal sentence that can be reviewed for the first time on appeal. Here, Clay is attempting to challenge the legality of his sentence via a constitutional claim, which Kansas caselaw has routinely recognized is not permitted under the statutory definition of illegal sentence. K.S.A. 22-3504(c)(1); *State v. Johnson*, 317 Kan. 458, 464, 531 P.3d 1208 (2023) (declining to review constitutional challenge to validity of jury trial waiver on the existence of upward departure factors under illegal sentence statute); *State v. Hayes*, 312 Kan. 865, 868, 481 P.3d 1205 (2021) (declining

6

review of illegal sentence claim based on *Apprendi* because motion for illegal sentence is not a proper vehicle to raise constitutional issues). The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). In short, this court can review his statutory challenge to the proper calculation of his criminal history score, but we cannot consider Clay's newly minted constitutional claims under the illegal sentence statute.

> *Clay has failed to preserve his constitutional arguments concerning the district court's authority to make factual findings related to his criminal threat convictions.*

Appellate courts generally do not address constitutional claims being raised for the first time on appeal. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Under Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36), an appellant must include a "citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" for each issue in their brief. The Kansas Supreme Court has warned that Rule 6.02(a)(5) will be strictly enforced, and litigants who fail to comply risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. 315 Kan. at 524. Even if a recognized exception applies, this court is under no obligation to review the new claim or provide a reason for the denial. *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024).

So even if Clay were relying on something other than an illegal sentence claim, he has not provided citations to the record where the specific issue of the constitutionality of the court's action that he raises on appeal was raised *and ruled on* by the district court. And if Clay were basing his argument on one of the recognized exceptions that allows us to consider an issue for the first time on appeal, he must invoke that exception and argue that it applies. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). An appellant who fails to do so is deemed to have waived and abandoned any exceptions to

7

the preservation rule. *In re N.E.*, 316 Kan. 391, 408, 516 P.3d 586 (2022). Clay fails to do so.

The Kansas Supreme Court also recently held that failure to raise "an exception to the preservation rule in the opening brief . . . cannot be cured in the reply brief." *Schutt v. Foster*, 320 Kan. 852, 857, 572 P.3d 770 (2025). That said, Clay did not address the exceptions to the preservation rule outlined in *Godfrey* in his reply brief. Instead, he responded broadly to the State's preservation-related arguments by asserting in his reply brief that preservation is irrelevant because this court has original jurisdiction to remedy *any* wrongs caused by erroneous district court rulings and orders. But preservation and jurisdiction are distinct legal concepts. See *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012) ("[T]he very fact that exceptions exist establishes the character of the preservation rule as being prudential, rather than jurisdictional."). Put another way, this court is not obligated to consider an unpreserved issue simply because jurisdiction exists. Such a rule would defeat the purpose of the preservation rule, which helps ensure that issues are fully developed below to enable appellate review.

In all fairness, a review of Clay's brief shows that he indeed argued in a memorandum in support of his criminal history challenge that it was not "permissible" for the district court to make a factual determination about the portion of the criminal threat statute under which his convictions arose. That argument was based on the holding from *Apprendi* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. 466. Yet he fails to direct this court to a place in the record where the district court ruled on any such *Apprendi* claim, and no rulings are immediately apparent from a review of the record. See *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 81, 274 P.3d 609 (2012) ("Without a ruling from the district court on this issue, we cannot proceed with formless appellate review."). In other words, without a ruling, there is nothing for this

8

court to review, which is no different than if the issue was never raised at all. Clay's arguments based on the Kansas Constitution fair even worse because, as the State points out, he never mentioned them below in any capacity.

In sum, we find no error in the district court's calculation of Clay's criminal history score.

II.    CLAY CANNOT RAISE A CONSTITUTIONAL CLAIM IN A MOTION TO CORRECT AN ILLEGAL SENTENCE

For the first time on appeal, Clay also challenges the legality of his sentence on equal protection grounds, arguing the district court violated the so-called "double rule," by imposing a total sentence exceeding the statutory maximum. See *State v. Redick*, 307 Kan. 797, 808, 414 P.3d 1207 (2018).

Kansas statutes impose a cap on the maximum prison term that can be imposed when a defendant has multiple convictions arising from a single complaint. K.S.A. 21-6819(b)(4). Applying the double rule to Clay's sentence here would mean the maximum total sentence he should have received would be 38 months' incarceration. Based on a ruling by another panel of this court in *State v. Dixon,* 60 Kan. App. 2d 100, 140-41, 492 P.3d 455 (2021), Clay argues that an equal protection violation occurs when the same treatment is not applied to a defendant like him with convictions arising out of separate complaints consolidated for trial, but which *could have* been filed in a single complaint. But Clay has failed to preserve this claim for appellate review.

As already outlined in Clay's first issue on appeal, appellate courts generally do not address constitutional claims being raised for the first time on appeal. *Holley*, 315 Kan. at 524. But Clay asserts this court can address his newly raised equal protection claim since an illegal sentence can be corrected at any time. K.S.A. 22-3504. He provides

9

no other basis for the court to hear his unpreserved claim. But Kansas caselaw is clear that the statutory definition of "illegal sentence" does not allow challenging the legality of a sentence on constitutional grounds. *Hayes*, 312 Kan. at 868. The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *Patton*, 315 Kan. at 16. Thus, Clay is precluded from raising an equal protection claim under the illegal sentence statute.

If Clay were basing his argument on one of the recognized exceptions that allows us to consider an issue for the first time on appeal, he must invoke that exception and argue that it applies. See *Godfrey*, 301 Kan. at 1043. An appellant who fails to do so is deemed to have waived and abandoned any exceptions to the preservation rule. *In re N.E.*, 316 Kan. at 408. Clay does not expressly rely on any of our Supreme Court's recognized exceptions in his opening brief.

The burden to convince us to hear a new claim rests on Clay, and he does not meet that burden. Clay's newly raised constitutional challenge to his sentence based on an application of the double rule is not properly before this court and therefore fails.

Affirmed.